Exhibit 5

```
 1              SUPERIOR COURT OF THE STATE OF CALIFORNIA
 2                  FOR THE COUNTY OF LOS ANGELES
 3   DEPARTMENT CCW-308               HON. ANN I. JONES, JUDGE
 4

     COORDINATION PROCEEDING SPECIAL )
 5   TITLE (RULE 3.550)              )
                                     )
 6   USPLABS DIETARY SUPPLEMENT      )
     CASES.                          )
 7   _____ )
                                     )
 8   RELATES TO:                     )
                                     )
 9   DOMINIC LITTLE, ET AL.,         )  CASE NO. JCCP4808
                                     )
10                   PLAINTIFFS,     )
                                     )
11              VS.                  )
                                     )
12   USPLABS, LLC, ET AL.,           )
                                     )
13                   DEFENDANTS.     )
     _____ )
14              REPORTER'S TRANSCRIPT OF PROCEEDINGS
                  WEDNESDAY, APRIL 26, 2017
15   APPEARANCES OF COUNSEL:
16   FOR PLAINTIFFS:   ANDREWS THORNTON HIGGINS RAZMARA
                       BY:  JOHN THORNTON, ESQUIRE
17                          SEAN HIGGINS, ESQUIRE
                            ROBERT SIKO, ESQUIRE
18                       2 Corporate Park
                         Irvine, California  92606
19
                         THE EISENBERG LAW FIRM
20                       BY:  CARA LIN EISENBERG, ATTORNEY AT LAW
                         509 South Beverly Drive
21                       Beverly Hills, California  90212
22   FOR DEFENDANTS:   COZEN O'CONNOR
                       BY:  AMY ALDERFER, ATTORNEY AT LAW
23                          BRETT TAYLOR, ATTORNEY AT LAW
                         601 South Figueroa Street
24                       Los Angeles, California  90017
25
        [FURTHER APPEARANCES OF COUNSEL ON THE FOLLOWING PAGE]
26
27   JOB NO:           118760
     REPORTED BY:      TIMOTHY J. McCOY, CSR NO. 4745
28                     OFFICIAL REPORTER PRO TEMPORE
```

```
 1
 2    APPEARANCES OF COUNSEL (CONTINUED):
 3
 4    FOR DEFENDANTS:        VOGT RESNICK SHERAK
                             BY:  ADAM GREELY, ESQUIRE
 5                           4400 MacArthur Boulevard
                             Newport Beach, California  92658
 6
                             WALSWORTH WFBM
 7                           BY:  KATIE A. STRICKLIN, ATTORNEY AT LAW
                             One City Boulevard West
 8                           Orange, California  92868
 9                           WILSON GETTY
                             BY:  WILLIAM C. GETTY, ESQUIRE
10                           12555 High Bluff Drive
                             San Diego, California  92130
11
12    TELEPHONIC COURTCALL APPEARANCES:
13                           MORRIS POLICH & PURDY
                             BY:  MATTHEW L. MARSHALL, ESQUIRE
14
15                           GATES, O'DOHERTY, GONTER & GUY
                             BY:  REBECCA AMIRPOUR, ATTORNEY AT LAW
16
17
18
19
20
21
22
23
24
25
26
27
28
```

| | | |
|---|---|---|
| 1 | CASE NUMBER: | JCCP 4808 |
| 2 | CASE NAME: | USPLABS DIETARY SUPPLEMENT CASES |
| 3 | LOS ANGELES, CA | WEDNESDAY, APRIL 26, 2017 |
| 4 | DEPARTMENT 308 | HON. ANN I. JONES, JUDGE |
| 5 | TIME: | 1:45 P.M. |
| 6 | REPORTER: | TIMOTHY J. McCOY, CSR NO. 4745 |
| 7 | APPEARANCES: | (AS HERETOFORE NOTED) |
| 8 | | * * * |

9

10     THE COURTROOM ASSISTANT:  Please come to order.

11  Department 308 is now in session.

12     THE COURT:  Thank you everyone.

13          We're on the record in the Coordinated Proceedings

14  with regards to the USPLabs Dietary Supplement Case.

15          If I could ask counsel here in court to make their

16  appearances for the record.

17     MR. HIGGINS:  Good afternoon, your Honor.  Sean Higgins

18  for the plaintiffs.

19     THE COURT:  Thank you.

20     MS. EISENBERG:  And Cara Eisenberg for plaintiff Thomas

21  Park.

22     THE COURT:  Thank you.

23     MR. SIKO:  Good afternoon.  Robert Siko for the

24  plaintiffs.

25     MS. TAYLOR:  Good afternoon, your Honor.  Brett Taylor

26  on behalf of defendants USPLabs LLC, GNC Corporation,

27  The Vitamin Shoppe, Inc., The Vitamin Shoppe, Bally

28  Total Fitness Corporation, Vitamin World, Inc., Rite Aid

1   Corporation, and specially-appearing defendants USPLabs

2   Jack3d LLC, Oxyelite PN LLC, USPLabs Oxyelite LLC, USPLabs

3   Holdings LLC, Jonathan Vincent Doyle and Jacob Geissler.

4        MS. ALDERFER:  Good afternoon, your Honor.  Amy

5   Alderfer, Cozen O'Connor, for those same defendants as

6   Ms. Taylor.

7        THE COURT:  Thank you.

8        MS. STRICKLIN:  Katie Stricklin appearing on behalf of

9   Vitatech Nutritional Sciences, Inc.

10       MR. GREELY:  Good afternoon, your Honor.  Adam Greely,

11   co-counsel for SK Laboratories.

12       THE COURT:  Thank you.

13       MR. GETTY:  Good afternoon, your Honor.  Bill Getty on

14   behalf of defendant Max Muscle Marketing.

15       THE COURT:  Thank you.

16          Do you want to make an appearance or are you just

17   visiting?

18       MR. THORNTON:  Yes, I do.  John Thornton, appearing for

19   the plaintiffs.

20       THE COURT:  Thank you.

21          Okay.  Let's begin with the easy one, which is --

22       THE CLERK:  We also have CourtCall, your Honor.

23       THE COURT:  Oh, I'm sorry.

24          On Courtcall, I apologize, Mr. Marshall, are you on

25   the phone for SK Labs?

26       MR. MARSHALL:  Good afternoon, your Honor.  Yes, Matthew

27   Marshall for SK Laboratories.

28       THE COURT:  And there's someone on the phone for Max

1 Muscle?

2     MS. AMIRPOUR:  Yes.  Rebecca Amirpour for Brent Kemp

3 dba Max Muscle Pasadena.

4     THE COURT:  Is there anybody else on the phone whose

5 name I haven't called?

6         All right.  Thank you.  Everyone please be seated.

7 Let's deal with the easy one first, which is the unopposed

8 petition to establish a qualified settlement fund.

9     MR. HIGGINS:  Yes, your Honor.

10     THE COURT:  Anyone want to be heard on that one?  I'm

11 hoping everyone's happy.

12     MR. HIGGINS:  I think we'll submit, your Honor.

13     THE COURT:  Okay.  I have a proposed order which I can

14 sign here today.

15     MR. HIGGINS:  Okay.  Perfect.

16     THE COURT:  Okay.  So I'm going to put that to the side

17 and deal with the harder issue.

18         Has everyone had an the opportunity to read my

19 tentative with regards to the motion for trial preference?

20     MR. THORNTON:  I have.

21     THE COURT:  Do you want a second or two?  You just

22 walked into the room.

23     MR. THORNTON:  I understand the essence of it, yes,

24 your Honor.

25     THE COURT:  My thinking is that, as I sit here today,

26 I have all of the concerns that I've always had with

27 regards to the pendency of the criminal proceeding.  What

28 is changing is my confidence that it will be resolved in our

1   lifetime.  But I'm not there yet.  I'm growing skeptical,

2   but I'm not ready to give up the ghost on it.

3        And I guess what I'd like to do, frankly, is deny

4   this without prejudice, have a status conference in October

5   when this criminal case is set to go to trial, see where we

6   are with a much more thorough explication of the status of

7   the criminal case and the likelihood that the case will be

8   tried in my lifetime, and then we'll look at this again.

9        I guess what I'm trying to say is it still has

10  the same problems with regards to the threshold findings.

11  But at a minimum, knowing that, could we have a do-over

12  next January when we're no closer to trial than we are

13  today.

14        So that's my thinking kind of behind the tentative.

15  It's the tentative plus, which is, there are facial problems

16  with this motion that arguably could be cured but the

17  countervailing issues remain, and I remain cautiously

18  optimistic that the criminal trial will proceed with some

19  deliberate speed.

20        Yes.

21    MS. ALDERFER:  And your Honor, I do want to make you

22  aware that the criminal trial now is set for January 29th,

23  2018.  It was continued really by the court so that the

24  court could have adequate time for the Daubert motions.

25  But I can tell you that the Government's expert disclosures

26  are set for I believe it's May 1st.  So next week.  So

27  the ball is rolling forward.

28    THE COURT:  And it is not a run-of-the-mill federal

1 criminal prosecution, so I understand that, inthe absence

2 of very early disposition, it was going to take a little

3 bit of time.

4          That being said, I would hope it would be sooner

5 rather than later, frankly.  And perhaps October's too soon.

6 Maybe it's late January.

7          But I kind of want to see if that's actually

8 happening.  Because at some point the rationale for

9 a never-ending criminal prosecution gets thinner.

10     MS. ALDERFER:  Right.  We definitely understand the

11 Court's concern.  I mean, we'd be agreeable to coming back

12 in October, and I'd be agreeable to providing you, if you'd

13 prefer, a status report in writing in October with a hearing

14 date in January, whatever the Court's preference is.

15     THE COURT:  Now, with regards to the Daubert motions,

16 because obviously that's going to be critical to the

17 ability of the Government to prosecute the case, what's

18 the scheduling?

19     MS. ALDERFER:  And I have a copy, your Honor, of the

20 court's order resetting trial, if you'd like a copy.

21     THE COURT:  I would.  That would be very helpful.

22 thank you.

23     MS. ALDERFER:  If I could pass that through to your

24 clerk.

25          Your Honor, it's on Page 4 of 4, which is where

26 you would see the schedule.  And it's in bold, just about

27 a third of the way down the page.

28     MR. THORNTON:  May I address Counsel just for a moment,

1    your Honor?

2         THE COURT:  Uh-huh.

3              (Sotto voce discussion between counsel)

4         THE COURT:  Of all the things that are unsaid here,

5    it's the hearing on the Daubert motions.  Lots of briefing,

6    lots of deadlines.  I'm just not seeing that the court's

7    going to deal with it.

8         MS. ALDERFER:  Well, it has set the date for trial.

9    If your Honor would like, I'd be happy to try to inquire

10   If there has been a hearing date set.  I suspect perhaps

11   one has not been set yet.

12        THE COURT:  That's my guess, too.

13        MS. ALDERFER:  But if you'd like, I'm happy to try to

14   find that out for you.

15        THE COURT:  Well, here is my -- well, I have a couple

16   of concerns, which is somewhat exacerbated by this schedule

17   and sort of separate and apart from the preference motion.

18              Obviously the interest that's competing with the

19   preference motion is the same interest that's competing

20   with getting this case underway, which is, frankly, the

21   constitutional right not to have to testify against yourself

22   and to not have any of the adverse inferences otherwise

23   drawn in light of the assertion of that privilege.  That

24   is a sensible balancing for a period of time.  It makes

25   less sense two years later.  And this is two years later

26   without really, frankly, I think a reasonable prospect

27   of going forward in January.

28        MS. ALDERFER:  Well, your Honor --

1    THE COURT:  I mean, how do I prosecute a case, how

2  do I pick a jury if the Government doesn't know if their

3  scientists are coming in?

4    MS. ALDERFER:  I think one option, which you

5  telegraphed, is to have us come back in the fall and we can

6  tell you then what is happening with the criminal case, has

7  there already been a hearing on the Daubert motions, what

8  is the status.  It may be, yes, the case is moving forward

9  and will be tried at the end of January, and you'll have

10  that assurance.

11    THE COURT:  Well, and maybe there's a hearing date in

12  the original criminal trial scheduling order which this

13  refers to, which I don't have.  Maybe there's a --

14    MR. HIGGINS:  Your Honor, if I may?  I think I have

15  more direct communications with some of the parties in

16  the criminal trials.  It's my understanding they don't

17  necessarily agree on the extent of and whether the --

18  and the timing of Daubert hearing.  So there has not been

19  a hearing set at all.  And they don't even agree on the --

20    THE COURT:  No, they have a briefing schedule.

21    MR. HIGGINS:  Right.  But they don't even agree on

22  whether the court's going to have Daubert hearings and how

23  he's going to have them and when.  So that remains a source

24  of conflict in the criminal proceedings.

25    THE COURT:  Well, what I don't want to do, frankly -- I

26  mean, here is the scenario I'm trying to avoid.  We run out

27  of patience because Judge Lindsay just is not proceeding

28  with all the deliberate speed on the criminal prosecution,

1   we start discovery and then we get testimony, then we have

2   the criminal trial, whatever happens in the criminal trial

3   happens in the criminal trial, but we're still working on

4   discovery.  So then we go back and redo all the discovery

5   now that the criminal trial no longer places into jeopardy

6   and the assertion no longer -- I mean, it's just incredibly

7   inefficient.

8          If everything would stay fixed in the universe

9   forever, then that's one thing.  But the honest truth

10  is you'll end up doing everything twice.  Which would be

11  incredibly inefficient.

12         Let's say he doesn't go in January but he goes

13  in April.  This case isn't going to be ready for trial in

14  April of 2018.  So then all of a sudden there's a conviction

15  of some and acquittal of others and now we're redoing

16  depositions and we're doing interrogatory responses and

17  we're doing discovery because earlier assertions of

18  privilege now will not pertain.  And so it's just

19  inefficient, to say the least.

20         And what I don't want to have happen is for a

21  criminal defendant to be forced to the election of having

22  to testify or to, frankly, have a negative inference if we

23  are literally within six months of having a criminal trial

24  or eight months of having a criminal trial.  So that's my

25  debate.

26         But I am running out of patience.  I'll share

27  that with you.

28     MS. ALDERFER:  Well, I mean, we would beg your

1  indulgence for a another short continuance, then, till the

2  fall, to hopefully have, you know, a clearer idea at that

3  point of what is happening with the criminal trial.

4        Again, at this point in time this was done, you

5  know, with the direction of the court, and so I have no

6  reason to think the court would have set a January 29th,

7  2018 trial date if he didn't believe it could be delivered.

8  And, you know, I would ask that the Court give Judge Lindsay

9  the benefit of that doubt and have us come back in the fall

10  and we can revisit where we're at.

11     THE COURT:  Well, in all fairness, and I don't mean to

12  be at all critical, but in all fairness to Judge Lindsay,

13  he's looking at a very complicated, unusual criminal

14  prosecution that took place over the course of six years.

15  It's deemed complex.

16        He has in here "The court will schedule a pretrial

17  conference by a separate order."  Do you know whether he's

18  done that?  Because that obviously would be the opportunity

19  to hear the Daubert motions.

20     MS. ALDERFER:  Ms. Taylor is indicating she has looked

21  at the docket and that we haven't seen that on the docket

22  yet.

23     THE COURT:  Okay.

24     MS. ALDERFER:  Is that correct?

25     MS. TAYLOR:  That's correct.

26     MS. ALDERFER:  Now, if your Honor would like, I'm

27  happy to provide you -- you know, we'll continue to monitor

28  the docket, and if that schedule, if that order becomes

Page 12

1    available, to lodge it with your Honor if you'd like.

2         THE COURT:  Yeah, I mean, I don't have access to PACER.

3              Here is what I'm thinking.  The issue with regards

4    to Daubert challenges will be fully briefed by August.  If

5    we're looking at a fall hearing on those issues, that would

6    be profoundly influential on the Government's prosecution.

7    I can't imagine you're going to get beyond a reasonable

8    doubt without your scientists suggesting that there's

9    something wrong with the supplements.  So at a minimum I

10   think we should --

11        MR. HIGGINS:  Your Honor, if I may?

12        THE COURT:  Yeah.

13        MR. HIGGINS:  Let me address that point and a couple

14   others.  The first is, only one of the charges actually

15   addresses the dangerousness of the products.  The others

16   are money laundering and fraud charges that aren't going

17   to be influenced by the Daubert decision.

18              And then stepping back, a couple of points I wanted

19   to make.  First is, the last time the criminal trial was

20   continued the judge said no more continuances, and now we're

21   three or four in.  And then the question is, even if it goes

22   in January --

23        THE COURT:  No, I think we're like three in, aren't we?

24        MR. HIGGINS:  We're three in.

25        THE COURT:  Yeah.

26        MR. HIGGINS:  We're three in.

27              Even if it goes in January, are they going to

28   let us -- let's say they're convicted.  Are they going

Page 13

1   to let us proceed despite pending appeals?  There's a

2   whole post-trial series of procedures.

3       THE COURT:  Yeah, we can, but then you worry about

4   whether or not that's a legitimate assertion.  But I

5   digress.

6           If all you have are unrelated offenses that have

7   nothing to do with the efficacy or contents or composition

8   of the supplements, that all that's left in this criminal

9   prosecution is you didn't do your tax returns correctly or

10  you didn't report this income or, you know, wire fraud for

11  unrelated transactions, talk to me about whether the stay

12  remains in place.

13          The reason there is a stay in place is that

14  the subject matter of the criminal prosecution overlaps

15  with the subject matter of the civil proceeding.

16          If I have just a guy who's there because he

17  didn't file his tax returns or whatever that's really very

18  tangentially related to the issues presented in this civil

19  case, I have many fewer concerns about the implications on

20  his ability to fully and adequately defend himself.  But

21  that's not where we are today.

22      MR. HIGGINS:  The last point I would make, your Honor,

23  is you didn't get the case brand new.  This case is already

24  in its now fifth year.  I really think the Book trial can

25  be -- and Mr. Thornton can address the specifics of the

26  preference motion, but that trial can be ready by April.

27  All of the liability discovery is done and --

28      THE COURT:  I know I didn't get this case new, but

1    the criminal proceeding isn't that old, and that really

2    derails -- and not only derailed this case but derails any

3    case in which there is now a criminal prosecution pending

4    in a relatively complex criminal proceeding.

5          That being said, it's a balancing.  So for some

6    period of time I am willing to let the criminal process

7    proceed without jeopardy to true fact-finding in the civil

8    case.  Fact-finding doesn't happen in civil cases when there

9    are criminal charges pending.  People take the Fifth, you

10   never hear what happened, and, frankly, there's a negative

11   inference drawn.  That's really not getting to the bottom

12   of what happened.  That's really not what we're about here.

13   We're really here to discover the facts underlying the civil

14   case.

15          And so, I am willing in a search for the truth to

16   allow some time to elapse so that these witnesses can appear

17   and testify without any criminal implications and without

18   the assertion of privilege being valid.  And my recollection

19   is that upon conviction, we are there regardless of

20   the status of appeals.  But I'd have to go back and

21   refamiliarize myself with my Fifth Amendment privilege law.

22          But in any event, I would certainly be less

23   sympathetic to a need for continuance for an appeal in

24   the criminal conviction.

25          And then once they are convicted or once they are

26   acquitted -- once they are acquitted there is no appeal,

27   and once they are convicted the rationale for the Fifth

28   Amendment disappears.

Page 15

1      MS. EISENBERG:  Your Honor, if I might?

2      THE COURT:  Yeah.

3      MS. EISENBERG:  You indicated you want to see it

4  tried within your lifetime, but I think it's within some

5  of these plaintiffs' lifetime is maybe the issue.  But --

6      THE COURT:  I actually did not find that to be

7  established for the purposes of this motion.

8      MS. EISENBERG:  But broader than that, most of the

9  discovery -- I've had cases that have that concern where

10  the Fifth is being waived prior to trial.  That's sort of

11  like this case.  Most of the fact discovery has been done.

12  Even if these criminal witnesses came to trial that had

13  to take the Fifth Amendment, that's already been waived

14  because the factual depositions have already been taken.

15      THE COURT:  Right.  But --

16      MS. EISENBERG:  So who would be bringing the Fifth?

17  I mean, I understand the Court's concerns.

18      THE COURT:  The person who's sitting on the witness

19  stand who was subpoenaed to testify.  The person who is

20  critical to an understanding by any fact-finder of in

21  fact what happened in this case.  It would be so highly

22  prejudicial, it would be a deprivation of due process

23  to the defense to have that kind of trial.

24      MS. EISENBERG:  That's all true, but --

25      THE COURT:  So that's why I don't want to have it.  I

26  don't want to deprive the defendants of their due process

27  rights.

28          While we have an active criminal prosecution going

Page 16

1    on, if it appears to me that this case is forever stalled

2    and no one has any interest in trying the case, talk to me.

3    But that witness will be called to testify for the mere

4    theater of asking him to take the Fifth.

5        MS. EISENBERG:  Well, no.  I mean, I understand

6    completely, your Honor, but where the discovery has been

7    obtained already and the deposition testimony, and there

8    has been no Fifth Amendment, that's waived.  That's deemed

9    waived for that subject.

10           So normally the fact pattern is we that haven't

11    engaged in discovery and we wait.  But we have in this case.

12        THE COURT:  I know.  I understand the problem.  So when

13    you subpoena Mr. -- he's under indictment.  Give me a name.

14        MR. HIGGINS:  The CEO, Jacob Geissler.

15        MS. ALDERFER:  Mr. Geissler.

16        THE COURT:  Okay.  So Mr. Geissler's subpoenaed.

17        MS. EISENBERG:  And his deposition's been taken.  So

18    as to the --

19        THE COURT:  He's subpoenaed, and he's on the stand.  And

20    guess what you're going to do?  Ask him questions.  And you

21    know what he's going to do?  He's going to assert the Fifth.

22        MS. EISENBERG:  Perhaps we can brief the issue.  Because

23    my understanding is that as to the prior testimony, he's

24    waived that right.

25        THE COURT:  But we're not asking him about his prior

26    testimony.  You're asking him about his current testimony

27    as he's sitting on the stand.

28        MS. EISENBERG:  Yes.  But he's waived the right to

1  assert it on the stand based on the prior testimony because

2  the objection wasn't made at the time.

3      THE COURT:  If you want to read a deposition on the

4  stand.  But I don't think you'll want to do that.  I think

5  you'll want live testimony.  And as to that, anything that

6  occurred after that deposition a Fifth Amendment privilege

7  applies, and I'm not going to have that kind of theater

8  going on.

9      MS. EISENBERG:  Okay.

10     THE COURT:  I'm trying to get to the facts, and I want

11  a jury to have the benefit of all of the facts.

12     MS. EISENBERG:  Understood.

13     THE COURT:  And I don't want a witness being put in a

14  position where he either waives a constitutional right in

15  a criminal proceeding or not.

16          The good news is we have a relatively stable

17  collection of discovery.  People aren't losing their

18  recollections, people aren't destroying documents, things

19  aren't disappearing off the face of the universe.  This

20  is a question about when we're going to have the trial.

21  And frankly, to have a trial six months from now or eight

22  months from now is -- now, I will tell you that's really

23  the expectation, that the case goes in January.  If there's

24  a further continuance, then, anybody, contact me, I'll reset

25  the status conference.  Because at some point, no, we're not

26  waiting for Godot.  And then we'll worry about whether or

27  not additional testimony -- whether we can proceed by way

28  of deposition and avoid the problem.

Page 18

1        MS. EISENBERG:  Right.

2        THE COURT:  But in an ideal world I have live witnesses

3   with current recollections, where the jury can figure out

4   whether they're lying or not, and we do a real trial with

5   all of the facts presented.  But that's really with the

6   expectation that this criminal diversion is resolved sooner

7   rather than later.

8        And if it gets much longer -- and I think October

9   is a fine time to make that determination, which is, we're

10  going to trial in January and nothing's changing, and the

11  pretrial motions are being set and heard and decided.  Or

12  we have a plea, in which case you can contact me and I'll

13  go earlier rather than later.

14       MR. THORNTON:  Your Honor, if I may just be briefly

15  heard on behalf of the interests of my clients.

16       THE COURT:  Yes.

17       MR. THORNTON:  I fully understand the Court's analysis.

18  I'm not quarreling with it per se.  But for the Court's

19  analysis, I have known Justin Book, I have known Stan and

20  Naomi Book, I've seen this family that literally spends

21  all of their nonworking waking hours in a sincere but very

22  rundown convalescent hospital.  The change in this family's

23  life by being able to bring their son home is a dramatic

24  one.  And so I simply say that when we do balance these

25  equities, that we be given an opportunity.

26       I've had a case involving a dietary supplement,

27  metabolite, in which it took four years for the criminal

28  proceedings to conclude.

1    THE COURT:  It is not my intention to wait that long.

2         I will underscore a couple of things.  One,

3    this is without prejudice to not only this plaintiff, but

4    actually what I want the parties to do -- and I am assuming

5    that the case goes forward in January and is concluded

6    by what?  April the criminal trial will be over?

7    MS. ALDERFER:  Uh-huh.

8    THE COURT:  I'd like to know what or who our bellwethers

9    are, I'd like to have a game plan for getting this case to

10   trial, I want to know what additional discovery, assuming

11   there's no more Fifth Amendment privilege can be asserted,

12   what updating needs to be done, what additional evidence

13   needs to be put together.

14        Let's have a game plan.  Assuming this trial goes,

15   then what.  And this is a request for preference, but it may

16   or may not be in the interests of all the other plaintiffs

17   that this is our first bellwether.

18        He may be a perfect bellwether for all kinds of

19   reasons.  He may be a dreadful one for other reasons.  I

20   don't know.  I think that's what the plaintiffs ought to

21   be thinking about.

22        And frankly, what I'd like to do in October is

23   we're either going and I can set those dates in October for

24   May.  Because that criminal trial will be over.  Then you

25   have real trial dates and we have a real game plan and we

26   have real bellwethers and we just keep going with what we've

27   been doing.  That's why I think October is a good time.

28        And frankly, at that point, once we come in with

1   a trial plan, if the criminal trial hasn't happened, oh,

2   well, we've tried.  We've waited.

3          I'm willing to give the U.S. Attorney's Office

4   two years to bring their case to trial, and after that I

5   think it's entirely reasonable to revisit my original stand.

6          So I want to do this without prejudice, because

7   this may be who you want as your bellwether, it may not be

8   who you want as your bellwether.  I don't believe there's

9   a mandatory preference that I have to grant, and so, again,

10  meeting with everybody and coming up with a game plan, I'd

11  like in October for us to have a joint statement as to how

12  we're going to proceed.

13         And I'm going to assume that the trial is going in

14  late January, it will be concluded probably no later than

15  the end of April, and we will have verdicts and whatever

16  we have and then we finish up this case.  And we're trying

17  this case in 2018, at least one of these cases in 2018.

18         And if you can meet and confer on selection of

19  defense bellwethers and plaintiff bellwethers, that makes

20  the most sense.  And we'll set dates in 2018.  Okay?

21         So I hear you.  Again, this is very, very hard.

22  My real goal is to have the most complete presentation

23  of the entire story.  And if I can get that with a trial

24  in January of 2018, that's terrific.

25         If we get another continuance until the middle

26  of 2018, I think we're going to go ahead and do it.  And

27  then we can have an in-limine motion about whether we go

28  with what we have, whether you need any updates, we'll just

1  live with what we have, we can do it by way of deposition
2  to avoid the prejudicial effects of having a live witnesses
3  on the stand taking the Fifth, we can take it from there
4  and we'll figure out a way to try it.

5           It's not my preferred way to try it, and I'm
6  willing to give this just a tad more time to get it to
7  work, but my patience is limited at this point.

8           Do me a couple of favors.  I'd like counsel to
9  meet and confer with an expectation of we're going to
10 try one if not two cases in 2018 after the criminal trial
11 is concluded, and come up with a game plan for what would
12 need to be done in terms of updating the existing discovery
13 and selection of bellwethers and whether the parties can
14 agree on their two bellwether cases or whether this is one
15 of them, I don't know.

16          So, let me give you a date in October.  11:00 on
17 October the 4th.  And I'm denying the motion for trial
18 preference without prejudice.

19          I'd like the agenda for the next status conference
20 to be the selection of bellwethers, the selection of trial
21 dates in 2018 after the conclusion of the criminal case, an
22 update on the criminal proceeding, and a brief timetable by
23 both sides as to what remains to be done in order to go to
24 trial.  I'm trying to let them have their criminal trial,
25 but it's not an indefinite stay.

26     MS. ALDERFER:  Does your Honor want a written status
27 report ahead of the conference?

28     THE COURT:  Yes, please, five court days prior.  And

Page 22

1    if you can't agree, just give me your respective positions.
2    Agree on what you can agree on, and what you can't agree
3    on give me your respective positions, and that will be the
4    agenda for the next status conference.
5         Yes, sir.
6        MR. HIGGINS:  Just to refresh my memory, you've already
7    signed the QSF that we had submitted.
8        THE COURT:  It's right here.
9        MR. HIGGINS:  Oh.  Perfect.  Thank you.
10       THE COURT:  I will sign it in a momento.
11       MR. HIGGINS:  All right.  Thank you.
12       THE COURT:  Does that provide any resources to
13   Mr. Book's family?
14       MR. HIGGINS:  Unfortunately, it does not.
15       THE COURT:  Okay.
16        Okay, guys.  I get the problem in the criminal
17   case, but at some point I just can't wait any longer.
18       MS. ALDERFER:  Thank you, your Honor.
19       THE COURT:  Thank you everyone.
20        Noticed waived?
21   COURTROOM RESPONSE:  Notice waived.
22       THE COURT:  I'll issue the ruling and get it signed.
23       MR. THORNTON:  Thank you, your Honor.
24
25        (At 2:10 p.m., the proceedings were adjourned)
26                        – – –
27
28

1           SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                 FOR THE COUNTY OF LOS ANGELES

3        DEPARTMENT 308           HON. ANN I. JONES, JUDGE

4                           - - -

5

6

7    COORDINATION PROCEEDINGS              )

     SPECIAL TITLE (RULE 3.550)            )

8                                          )

     USPLABS DIETARY SUPPLEMENT CASES.     )   JCCP NO. 4808

9                                          )

     _____)

10

11

12            I, TIMOTHY J. McCOY, CSR No. 4745, Official

13   Reporter Pro Tempore of the Superior Court of the State of

14   California, for the County of Los Angeles, do hereby certify

15   that the foregoing pages, 1 through 20, inclusive, comprise

16   a full, true and correct transcript of the proceedings held

17   in the above-entitled matter on Wednesday, April 26, 2017.

18

19            DATED THIS 8TH DAY OF MAY 2017.

20

21

                  _____

22               TIMOTHY J. McCOY, CSR NO. 4745

                 OFFICIAL REPORTER PRO TEMPORE

23                LOS ANGELES SUPERIOR COURT

24

25

26

27

28