**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

_____

| |
|---|---|
| **UNITED STATES OF AMERICA** | \| |
| | \| |
| | \| |
| **v.** | \|                **No. 3:15-cr-00496-L** |
| | \| |
| **USPLABS, LLC**              **(1)** | \| |
| **JACOBO GEISSLER**        **(2)** | \| |
| **JONATHAN DOYLE**        **(3)** | \| |
| **MATTHEW HEBERT**      **(4)** | \| |

**DEFENDANTS USPLABS, LLC, JONATHAN DOYLE, JACOBO GEISSLER, AND
MATTHEW HEBERT'S MOTION TO DISMISS COUNTS TWO THROUGH FOUR
OF THE FIRST SUPERSEDING INDICTMENT AS UNTIMELY**

Defendants USPlabs, LLC ("USPlabs"), Jonathan Doyle, Jacobo Geissler, and Matthew

Hebert (collectively, the "Owner Defendants"), respectfully move this Court to dismiss Counts

Two through Four of the First Superseding Indictment [Dkt. No. 95, filed Jan. 5, 2016] (the

"Indictment") at ¶¶ 45-48.  Counts Two through Four must be dismissed because they were not

brought within the applicable five-year statute of limitations.  *See* 18 U.S.C. § 3282.   These

counts cannot be made timely under 18 U.S.C. § 3292, because the Government has failed to

establish by a preponderance of evidence that it submitted an "official request" under § 3292, or

when it received a final response to its request.  USPlabs and the Owner Defendants respectfully

show the Court as follows:

## TABLE OF CONTENTS

I.      SUMMARY OF THE ARGUMENT ................................................................................ 1

II.     FACTUAL BACKGROUND ........................................................................................ 2

    A.      The Allegations Contained in Counts Two Through Four. .................................... 2

    B.      The Government makes a request for assistance to China. .................................... 4

III.    ARGUMENTS AND AUTHORITIES ........................................................................ 6

    A.      Counts Two Through Four Are Untimely. ............................................................ 6

    B.      The Government's Tolling Application Did Not Show By A Preponderance Of
        Evidence That The Government Made An "Official Request." ............................. 6

    C.      Even if the Tolling Order was Proper, Tolling Expired when MJC Took Final
        Action on the Government's Request. .................................................................. 11

IV.     CONCLUSION AND PRAYER .................................................................................. 12

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Sparling et al. v. Doyle et al.*,
    No. EP-13-CV-323-DCG, 2015 WL 4528759 (W.D. Tex. July 27, 2015),
    *objections overruled*, 2016 WL 236266 (W.D. Tex. Jan. 20, 2016)
    (Guaderrama, J.)............................................................................................................1

*United States v. Heacock*,
    31 F.3d 249 (5th Cir. 1994) ........................................................................................6

*United States v. Marion*,
    404 U.S. 307 (1971)....................................................................................................7

*United States v. Meador*,
    138 F.3d 986 (5th Cir. 1998) ....................................................................................11

*United States v. Quantities of Finished and In-Process Foods*,
    Case No. 1:13-cv-03675-WBH, slip op. (N.D. Ga., entered April 3, 2017)............................4

*United States v. Watson*,
    599 F.2d 1149 (2d Cir.), *opinion amended on reh'g*, 690 F.2d 15 (2d Cir.
    1979) ............................................................................................................................7

*United States v. Wilson*,
    322 F.3d 353 (5th Cir. 2003) ..................................................................................7, 9

**Statutes**

18 U.S.C. § 1343 .............................................................................................................6, 9

18 U.S.C. § 3282 ........................................................................................................6, 8, 11

18 U.S.C. § 3282(a) ............................................................................................................6

18 U.S.C. § 3292 ........................................................................................................*passim*

18 U.S.C. § 3292(a)(1)................................................................................................6, 7, 11

18 U.S.C. § 3292(b) ..........................................................................................................10

18 U.S.C. § 3292(d) ............................................................................................................5

21 U.S.C. § 350b(a)(1), (d) .................................................................................................3

Food, Drug & Cosmetic Act .................................................................................................3

**Other Authorities**

74 Fed. Reg. 34752, 34834 (June 25, 2007) ...................................................................................3

Fed. R. Crim. P. 6(e) ......................................................................................................................8

Federal Rule of Civil Procedure 5(b)(2) .....................................................................................13

## I.     SUMMARY OF THE ARGUMENT

USPlabs is a dietary supplement own-label distributor; SK Labs is a contract manufacturer that manufactured USPlabs' supplements and consulted with USPlabs on the formulation of its supplements.  In November 2015, the Government indicted USPlabs, several of its principals (Geissler, Doyle, and Hebert), one of its consultants (Willson), and its compliance officer (Miles), and SK Labs and one of its employees (Patel) on a number of counts relating to Defendants' importation of dietary ingredients and marketing and sale of dietary supplements containing those ingredients. Counts 2 through 4 allege that certain of the Defendants engaged in specific acts of wire fraud in 2010 in relation to the use of DMAA[1] in two of USPlabs' supplements: Jack3d and Oxy-Elite Pro.  The Government does not allege that DMAA is unsafe, nor could it: two judges have already found that there is no evidence that DMAA is poses a danger to any dietary supplement consumer, as did the Department of Defense.  *See Sparling et al. v. Doyle et al.*, No. EP-13-CV-323-DCG, 2015 WL 4528759, at *1 (W.D. Tex. July 27, 2015) (Berton, M.J.), *objections overruled*, 2016 WL 236266, at *1 (W.D. Tex. Jan. 20, 2016) (Guaderrama, J.); Report of Dep't of Defense on 1, 3-DMAA (June 3, 2013) (the "DOD Report").[2]

---

[1] "DMAA" refers to 1,3-dimethylamylamine.  It is known by a host of other names, including, 1,3-dimethylamylamine HCL; 1,3-dimethylpentylamine; 2-amino-4-methylhexane; 2-hexanamine,4-methyl-(9Cl); 4-methyl-2-hexanamine; 4-methyl-2-hexylamine; 2-hexanamine, 4-methyl-; 4-methylhexan-2-amine (IUPAC); C7H17N; CAS 105-41-9; dimethylamylamine (DMAA); dimethylpentylamine (DMP); DMAA; floradrene; forthan; forthane; fouramin; geranamine; GeranaX; geranium extract; geranium flower extract; geranium oil; geranium oil extract; geranium stems and leaves; metexaminum; methexaminum; methylhexanamine (MHA); methylhexaneamine (MHA); pelargonium; pentylamine; or synthetic geranium.

[2] A true and correct copy of the DOD Report is attached hereto as Ex. 1.  Volumes of scientific studies also establish that DMAA is safe.  *See* Ex. 2 - Bloomer et al. (2011a), Effects of 1,3-Dimethylamylamine and Caffeine Alone or in Combination on Heart Rate and Blood Pressure in Healthy Men and Women; Ex. 3 - Bloomer et al. (2011b), Effect of Caffeine and 1,3-Dimethylamylamine on Exercise Performance and Blood Markets on Lipolysis and Oxidative Stress in Trained Men and Women; Ex. 4 - Farney et al. (2012), Hemodynamic and Hematologic Profile of Healthy Adults Ingesting Dietary Supplements Containing 1,3-Dimethylamylamine and Caffeine;  Ex. 5 - McCarthy et al. (2012a), A Finished Dietary Supplement Stimulates Lipolysis and Metabolic Rate in Young Men and Women; Ex. 6 - McCarthy et al. (2012b), Biochemical and Anthropometric Effects of a Weight Loss Dietary Supplement in Health Men and Women; Ex. 7 - Whitehead et al. (2012), Impact of a Dietary Supplement Containing 1,3

Each of the alleged acts of wire fraud charged in Counts Two through Four occurred more than five years before the date of the Indictment; thus, they are barred by the statute of limitations for wire fraud.  The Government may attempt to circumvent this fact by arguing that limitations was tolled by its request for assistance to the Ministry of Justice for the People's Republic of China for evidence relating to Vincent Zhou and his company, SmartChem, both of which did business with USPlabs. Although Judge Fitzwater, on the Government's motion, signed an order tolling the statute of limitations while China responded to the Government's request, that order is insufficient to save Counts Two through Four from dismissal for two reasons: (1) the Government failed to produce its request to China to Judge Fitzwater when it requested a tolling order, nor did it produce sufficient evidence to establish, by a preponderance of the evidence, that any evidence of Defendants' alleged wrongdoing was actually in China; and (2) there is no evidence of the date that China took "final action" on the Government's request, which is the date that tolling ends.  Counts Two through Four should be dismissed as barred by the statute of limitations.

## II.     FACTUAL BACKGROUND

### A.     The Allegations Contained in Counts Two Through Four.

Defendants were first indicted on November 4, 2015, followed by the First Superseding Indictment ("Indictment") on January 5, 2016.  Included among the 11 counts in the Indictment are three counts of wire fraud (Counts 2, 3, and 4), each of which alleges that certain of the Defendants were involved in a scheme "to defraud and to obtain money and property from

---

Dimethylamylamine on Blood Pressure and Bloodborne Markets of Health:  a 10-week Intervention Study; Ex. 8 - Marsh DF, Howard A, Herring DA, The Comparative Pharmacology of the Isometic Nitrogen Methyl Substituted Heptylamines; Ex. 9 - Joseph V. Rodricks, Safety Evaluation of 1,3-Dimethylamylamine (DMAA) in Dietary Supplement Products; Ex. 10 - Environ International Corporation, A Comparison of the Physiological Effects of Caffeine and Dimethylamylamine (DMAA).

retailers, distributors and consumers of dietary supplements by materially false and fraudulent pretenses, representations and promises." Indictment ¶ 46. Counts Two through Four are each based on a wire communication relating to certificates of analysis ("COAs") that were allegedly provided to a certain USPlabs' customer or, in one instance, to SK Labs.

The FDA defines "Certificate of Analysis" to mean "a document, provided by the supplier of a component prior to or upon receipt of the component, that documents certain characteristics and attributes of the component." 74 Fed. Reg. 34752, 34834 (June 25, 2007). With respect to Counts Two through Four, the Government refers to COAs that relate to the DMAA used in two of USPlabs' supplements. Specifically, Count Two alleges that USPlabs provided a COA to one customer that stated that the DMAA used in those two supplements comes from geranium, when in fact it was synthetically created. Count Three relates to email correspondence between Doyle and Patel regarding the contents of another COA. Count Four relates to email correspondence between Patel and a USPlabs' employee regarding the contents of another COA[JD1]. In general, all three counts charge Defendants with an alleged scheme to defraud by labeling the DMAA contained in certain of USPlabs' supplements as natural instead of synthetic.

These three counts and the conduct at issue relate, more broadly, to whether DMAA is a dietary ingredient under the Food, Drug & Cosmetic Act. Under the Act, if DMAA (natural or synthetic) existed in the food supply in 1994, then dietary supplement manufacturers like USPlabs were entitled to use it in supplements without notice or prior approval by the Government. *See* 21 U.S.C. § 350b(a)(1), (d). At the time of the communications charged in Counts Two through Four, there was debate in the dietary supplement industry whether DMAA met this requirement. USPlabs and other manufacturers took the position – one supported by

3

scientific literature – that DMAA occurred naturally in geranium. Other industry participants disputed this.  In April 2012, the FDA issued warning letters to USPlabs and nine other dietary supplement manufacturers alleging that DMAA does not occur in nature and is therefore a "New Dietary Ingredient" that must be cleared by the FDA.[3]  Contrary to the FDA's position, a federal judge has since found that DMAA does occur in nature (but that it is a New Dietary Ingredient for other reasons).[4]  After responding to the FDA's warning letter,[5] USPlabs voluntarily discontinued its use of DMAA in its dietary supplements.[6]

> ### B.     The Government Makes A Request For Assistance To China.

Each wire communication on which Counts Two through Four are based, occurred on a date outside the applicable 5-year statute of limitations.  Thus, absent tolling, they should be dismissed as barred by limitations.

In order to save Counts Two through Four from limitations, the Government sent a legal assistance request to the Ministry of Justice of the People's Republic of China (the "MJC"), seeking assistance in gathering certain evidence located in that country (the "Request").[7]  To date, the Government has not produced the Request to Defendants, despite their request that it do so.

---

[3] Warning Letter.

[4] *See United States v. Quantities of Finished and In-Process Foods*, Case No. 1:13-cv-03675-WBH, slip op. at 6-7 [Dkt. No. 140] (N.D. Ga., entered April 3, 2017).

[5] Response.

[6] After USPlabs decided to remove DMAA from its supplements, another supplement manufacturer, Hi-Tech, brought litigation against the Government; that litigation has revealed that the Government was aware, at the time of the warning letters, that DMAA did occur in geraniums and was not, therefore, a new dietary ingredient as the FDA alleged.  *See, e.g.*, Ex. 11 - Motion for Summary Judgment, *United States v. Quantities of Finished and In-Process Foods*, Case No. 1:13-cv-03675-WBH [Dkt. No. 108-1 at 5-12] (N.D. Ga., filed Dec. 30, 2016).

[7] *See* Ex. 12 at 7-8 (Government's Tolling Application describing the Request).

On April 23, 2015, the Government filed an application under 18 U.S.C. § 3292 seeking to toll the statute of limitations (the "Tolling Application") in Case No. 3:14-MC-00146-D, a miscellaneous action before Judge Fitzwater.[8]   Citing the Request, the Tolling Application argued that tolling was appropriate because evidence of a "five-year course of dealing" with an individual named Vincent Zhou and his company, SmartChem, was located in China.  *Id.* at 9. However, the Tolling Application did not include the Request; rather, it attached only a cover letter from DOJ lawyer Frances Chang to the MJC referencing a "request for assistance."[9]

Despite being unable to review the Request, and thus to determine whether the Request constituted a valid request for assistance under the Government's Agreement on Mutual Legal Assistance in Criminal Matters with the People's Republic of China ("MLAA"), Judge Fitzwater signed without modification the Government's proposed order granted the Tolling Application on April 24, 2015 (the "Tolling Order").[10]   Tolling Order, at 2.  In doing so, he adopted the finding in the Government's proposed order that "[i]t appears, based on a preponderance of evidence presented to the Court, that the Office of International Affairs of the United States Department of Justice made an official request, as defined in 18 U.S.C. § 3292(d), to an 'authority of a foreign country' in the People's Republic of China…."  Tolling Order, at 1.

---

[8] Ex. 12 – Tolling Application.

[9] *See* Ex. 13 – Cover Letter and FedEx Receipt for the Request.

[10] *See* Ex. 14 – Government's Proposed Order Granting the Tolling Application.  To date, Defendants have not received a signed copy of the Order.

III.     ARGUMENTS AND AUTHORITIES

Counts Two through Four must be dismissed for three reasons.  First, each Count was filed more than five years after the email on which the Count is based was sent, and is therefore untimely.  Second, the Tolling Application failed to establish by a preponderance of evidence that the Government made a valid request under § 3292, or that the Request sought evidence relevant to the grand jury's investigation.  Third, even if the Tolling Order was properly entered, it expired after China took final action on the Government's Request, which the Government has steadfastly refused to identify the date of.  Counts Two through Four must therefore be dismissed as time-barred.

A.     **Counts Two Through Four Are Untimely.**

Counts Two, Three, and Four allege separate violations of 18 U.S.C. § 1343.  They are based on emails sent on May 14, 2010, August 18, 2010, and September 28, 2010, respectively. Under the general five-year statute of limitations found at 18 U.S.C. § 3282(a), these Counts would have been timely only if they were filed before May 15, 2015, August 19, 2015, and September 29, 2015, respectively.   The original Indictment, however, was not filed until November 4, 2015.  Accordingly, Counts Two through Four were untimely by 174, 78 and 37 days, respectively.  Because these Counts were not timely filed, they must be dismissed.  *See, e.g., United States v. Heacock*, 31 F.3d 249, 256 (5th Cir. 1994) (noting that "section 3282 is a defense to prosecution . . . .") (quotation omitted).

B.     **The Government's Tolling Application Did Not Show By A Preponderance Of Evidence That The Government Made An "Official Request."**

Even though Counts Two through Four were filed after the statute of limitations expired, the Government contends that they are timely pursuant to the Tolling Order.  For the reasons

explained below, however, the Tolling Application was flawed, and the Tolling Order should not have been granted.  As such, this Court should not give the Tolling Order any effect.

When applying for tolling under 18 U.S.C. § 3292, the Government must make two factual showings by a preponderance of the evidence.  First, the Government must demonstrate that it made an "official request" to a foreign authority for evidence relevant to an offense under investigation by a grand jury.  *See* 18 U.S.C. § 3292(a)(1).  Second, the Government must show that it reasonably appeared that the evidence requested was actually located in the foreign country in question.  *See id*.  Because the Request in this case was filed pursuant to the MLAA, it must comply with the requirements of that agreement in order to be a valid request.  The MLAA establishes five mandatory criteria that every request made thereunder must comply with.  A request under the MLAA "***shall*** include the following":

(1)     it must identify the authority making the request;

(2)     it must identify the subject matter of the investigation, including the relevant statutes and potential punishments;

(3)     it must identify the purpose of the evidence and its relevance to the investigation;

(4)     it must identify the time limit within which compliance is requested; and

(5)     it must describe the actual evidence sought.

*See* MLAA Art. 4.1 (emphasis added).  Indeed, these requirements are a *sine qua non* of requests made under the MLAA.[11]

While courts have looked at § 3292's two requirements and have assumed largely a ministerial role in reviewing tolling applications, it is nevertheless clear that they must ensure that these showings are made before issuing a tolling order.  *See United States v. Wilson*, 322

---

[11]     The MLAA distinguishes these absolute requirements from another set of conditions that also "shall" be included in requests made thereunder, but only "[t]o the extent necessary and possible."  MLAA Art. 4.2.

F.3d 353, 359-64 (5th Cir. 2003).   That is because statutes of limitation are "the primary guarantee against bringing overly stale criminal charges."   *United States v. Marion*, 404 U.S. 307, 322 (1971) (quoting *Public Schools v. Walker*, 9 Wall. 282, 288 (1870)).   For criminal statutes in particular, limitation periods "are to be liberally interpreted in favor of repose." *Marion*, 404 U.S. at 322 n.14 (citing *United States v. Habig*, 390 U.S. 222, 227 (1968)).   This fragile balance forged by Congress between valid and stale claims, therefore, requires a narrow interpretation of statutes that toll limitations periods, such as § 3292.   *Accord United States v. Watson*, 599 F.2d 1149, 1154 (2d Cir.), *opinion amended on reh'g*, 690 F.2d 15 (2d Cir. 1979), and *opinion modified on reh'g sub nom. United States v. Muse*, 633 F.2d 1041 (2d Cir. 1980) (holding that "the exception [to 18 U.S.C. § 3282] created by Fed. R. Crim. P. 6(e)[, the tolling rule at issue,] must be construed strictly.").

In this case, the Government has not carried its burden because it has failed to demonstrate by a preponderance of the evidence that the Request complied with the MLAA's requirements, and was thus a valid "official request" under the MLAA.

Despite its voluminous collection of exhibits, the Tolling Application only contains one document that was actually submitted to Chinese authorities – a letter from Frances Chang (DOJ Office of International Affairs, Washington D.C.) to Xiaoming Zhang (MOJ Department of Judicial Assistance and Foreign Affairs, Beijing, China), dated April 2, 2015.   *See* Tolling Application at Ex. 30 ("Chang Letter").   That letter purports to enclose "a request for assistance" with respect to an "investigation of USP Labs [sic], Jacob Geissler, Jonathan Doyle, Matthew Hebert, SK Labs, and Sitesh Patel."   Chang Letter at 1.[12]

---

[12]     The Chang Letter does not reference Defendant Willson.   Counts 2-4 should be dismissed as to Mr. Willson for this additional reason.

Despite numerous requests from Defendants, however, the Government has repeatedly refused to produce the actual request for assistance that was enclosed with the Chang Letter, citing diplomatic concerns regarding confidentiality.  The Government did not even attach the Request to its Tolling Application, which was filed *ex parte* and under seal.  Thus, Judge Fitzwater – like the Defendants and this Court – had no evidence by which to determine whether the Request was valid under the MLAA and therefore an "official request," other than the Chang Letter itself.  The Government has also refused to produce China's response, despite its clear relevance to whether Counts 2 through 4 are time-barred.

With the Chang Letter as the only direct evidence[13] submitted by the Government in the Tolling Application of what was covered in the Request, the Government failed to establish by a preponderance of the evidence that the Request met all of the MLAA's requirements, and was therefore a cognizable request under the MLAA.

*First*, it describes the "subject matter of the investigation" only in the vaguest possible way.  Specifically, rather than including a "summary of the facts," it simply states that the investigation was related to "potential prosecution of several U.S. citizens relating to criminal violations that involve the distribution of dietary supplements containing potential harmful ingredients that injured U.S. consumers." Chang Letter at 1.  It makes no reference to an investigation into whether Defendants committed acts aimed at "defraud[ing] and obtain[ing] money and property from retailers, distributors, and consumers of dietary supplements." Indictment ¶ 46 (describing Counts Two through Four).  Indeed, the Indictment is devoid of any

---

[13]     Although the Tolling Application also included as an exhibit a declaration from DOJ attorney Patrick Runkle, that declaration sheds no light as to the actual contents of the Request, other than the fact that the request had been sent.  *See* Ex. 15 – Patrick Runkle Declaration.

allegation that DMAA, the ingredient at issue in Counts Two through Four, "injured U.S. consumers."

*Second*, the Chang Letter does not describe the offenses under investigation, whether generically or by specific statutory reference (*i.e.*, 18 U.S.C. § 1343).  Unsurprisingly, it also fails to describe the potential punishments to which USPlabs and the Owner Defendants might be exposed.  For these reasons, the Chang Letter fails to comply with both Article 4.1(b) of the MLAA, and the offense-specific requirement of 18 U.S.C. § 3292.  *See Wilson*, 249 F.3d at 372.

*Third*, the Chang Letter fails to provide any date by which the Department of Justice expected a response to the Request.  As such, it fails to comply with Article 4.1(d) of the MLAA.

*Fourth*, and finally, the Chang Letter fails to state how or why the requested evidence (whatever the requested evidence may be) was relevant to its investigation, and therefore does not comply with Article 4.1(c) of the MLAA.  Indeed, it is virtually impossible to tell what evidence was actually requested, since the Chang Letter refers to nothing more specific than "bank, business, and other records."  Chang Letter at 1.  This is particularly true because the Government had already executed at least five search warrants as part of its investigation of Defendants: (1) a search warrant on USPlab's premises; (2) a search warrant on SK Labs' facilities; (3) a search warrant on Geissler's home; (4) a search warrant on USPlabs' cloud email server; and (5) a search warrant on Defendants' banks.  It had also served at least 14 grand jury subpoenas prior to the Request.  It is hard to conceive of any relevant evidence it had not previously obtained.

In sum, while the Chang Letter clearly establishes that the Government sent *something* to the MJC, it fails to prove the contents of that transmission under any standard of proof, let alone by a preponderance of evidence.  It provides no clear indication of what evidence the

10

Government asked the MJC to help obtain, no description – even in broad strokes – of what offenses or statutory violations the Government told the MJC it was investigating, and no indication of when the Government wanted the MJC to act.  Thus, on the record before this Court, the Government has plainly failed to demonstrate that it made a valid request for assistance to MJC under the MLAA.  As such, the Tolling Order was improperly granted, and should be given no effect by this Court.

      **C.**      **Even If The Tolling Order Was Proper, Tolling Expired When MJC Took Final Action On The Government's Request.**

Tolling under § 3292 only runs until "the date on which the foreign court or authority takes final action on the request."  18 U.S.C. § 3292(b).  Thus, to save Counts Two through Four from limitations, the Government must establish by a preponderance of the evidence that MJC did not take final action on its request until after May 15, 2015, August 19, 2015, and September 29, 2015, respectively.  *See* § 3292(a)(1) (placing the burden of proof on the government by a preponderance of the evidence); *United States v. Meador*, 138 F.3d 986, 992-93 (5th Cir. 1998) (holding that a "final action" occurs when the foreign government provides a dispositive response, and emphasizing that permitting the government to determine when tolling concludes "would rend the statutory scheme").  It has not done so, however; as explained above, the Government has steadfastly refused to produce the Official Request or any response that MJC made to the request.[14]  There is therefore no evidence of when the MJC issued a final response to

---

[14] Article 6.1 of the MLAA requires the requested party to "promptly" execute the request.  It thus appears unlikely that the request was pending, and continued to toll limitations, for more than six months after it was made.  (Six months is the amount of tolling necessary to save Count 2 from limitations.)  This is precisely why the burden is on the Government to establish when the MJC took action on its request. At a minimum, the Court should order the Government to disclose this material as being "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i). If the government is concerned with the dissemination of this material beyond this case, it can ask for a protective order.

the Government's Official Request, much less sufficient evidence to establish by a preponderance of the evidence that it was done after the operative five-year limitations date for Counts Two through Four.

## IV.    CONCLUSION AND PRAYER

Count Two through Four were not timely filed under 18 U.S.C. § 3282.  Moreover, they cannot be saved under 18 U.S.C § 3292, as the Government has not shown by a preponderance of evidence that it made a valid request under the MLAA, which is required for an order suspending any statute of limitations under § 3292.  Accordingly, for the reasons stated above, the Court should dismiss Counts Two through Four.

Respectfully submitted:

**By:**

/s/ CHRISTOPHER NIEWOEHNER                     /s/ RICHARD B. ROPER

Christopher Niewoehner (admitted *pro hac vice*)        Richard B. Roper
Illinois Bar No. 6243575                                Texas Bar No. 01723370
Reid Weingarten (admitted *pro hac vice*)
Patrick F. Linehan (admitted *pro hac vice*)            THOMPSON & KNIGHT LLP
David Fragale (admitted *pro hac vice*)                 1722 Routh Street
                                                        Suite 1500
STEPTOE & JOHNSON LLP                                   Dallas, TX 75201
1330 Connecticut Ave. NW                                Phone: (214) 969-1700
Washington, DC  20036                                   Fax: (214) 969-1751
Phone: (202) 429-3000
Fax: (202) 429-3902                                     **ATTORNEY FOR DEFENDANT**
rweingarten@steptoe.com                                 **JONATHAN DOYLE**

Michael John Uhl
Texas Bar No. 20371050

FITZPATRICK HAGOOD SMITH & UHL
2515 McKinney Ave.
Dallas, TX 75201
Phone: (214) 237-0900
Fax: (214) 237-0901

12

muhl@fhsulaw.com

**ATTORNEYS FOR DEFENDANT**
**USPLABS, LLC**

*/s/ S. Cass Weiland*

S. Cass Weiland
Texas Bar No. 21081300

Squire Patton Boggs (US) LLP
2000 McKinney Ave.
Suite 1700
Dallas, TX 75201
Phone: (214) 758-1504
Fax: (214) 758-1550
Email: cass.weiland@squirepb.com

**ATTORNEY FOR DEFENDANT**
**MATTHEW HEBERT**

*/s/ Michael P. Gibson*

Michael P. Gibson
Texas Bar No. 07871500

Burleson Pate & Gibson LLP
900 Jackson Street
Suite 330
Dallas, TX 75202
Phone: (214) 871-4900
Fax: (214) 871-7543
Email: mgibson@bp-g.com

**ATTORNEY FOR DEFENDANT**
**JACOBO GEISSLER**

## CERTIFICATE OF SERVICE

On July 5, 2017, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served the U.S. Probation Officer, all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2), and the probation officer assigned to the case.

/s/ Richard R. Roper
Richard B. Roper

13