UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| vs. § | Case No. 3:15-cr-00496-L |
| § | |
| MATTHEW HEBERT (4) § | |

### DEFENDANT MATTHEW HEBERT'S MOTION FOR SEVERANCE

Defendant Matthew Hebert ("Defendant" or "Hebert"), by and through his attorney of record, files this Motion for Severance requesting the Court to sever his trial from the other Defendants in this case for the reasons that follow:

Defendant Hebert is one of eight (8) individuals or entities named in the Indictment. Based on the charges contained in the Indictment and the anticipated evidence to be addressed at trial, Hebert is entitled to a severance pursuant to Rule 14 (a), Fed. R. Crim. P., for the reasons described herein.

This motion is not made for the purpose of "making a record" or otherwise burdening the Court. Hebert is well aware of the Order of August 16, 2017 [Doc. 345] relating to such unnecessary motions. Rather, Hebert submits that justice requires that he be severed from a trial of his co-defendants, particularly Defendants Geissler, Doyle and Patel.

### I.     BACKGROUND

The original Indictment in this case is dated November 4, 2015. The government filed a Superseding Indictment on January 5, 2016.

The Court is familiar with the case and its many complexities. What is not clear from the Indictment is the limited role Hebert played in the Company, USPLabs. Hebert was the graphics man and had computer familiarity that his colleagues lacked. The evidence at trial will show a

1

vast difference in his role in the company vis-à-vis Messrs. Geissler and Doyle.  That is, the quantum of evidence against others in the trial will be so great that any limiting instructions by the Court will not be effective.  The over-flow effect of the evidence would prejudice Hebert to the extent of denying him a fair trial in violation of Rule 14 (a), Fed. R. Crim. P.

### THE INDICTMENT

The Indictment concedes that Hebert had "primary responsibilities over product packaging design."  ¶4.  That is to say, Hebert drew up product labels on his computer.  The evidence at trial will indicate that Hebert always acted in good faith with respect to his label responsibilities and was never involved in the process of formulating or selecting the ingredients that were packaged and sold.

Indeed, only one paragraph of the government's substantive allegations mentions Hebert: he, along with USPLabs, Geissler and Doyle, allegedly "told lies" to certain retailers, falsely claiming that DMAA was naturally sourced from geranium plants. ¶ 26.

*Count 1 (Conspiracy to commit wire fraud):*

Hebert is not mentioned in regards to importing ingredients or chemicals (¶ 39).  He is charged with sending one email in May 2010 to an unnamed company allegedly using a fake Certificate of Analysis ("COA") to identify DMAA as coming from geranium plants. (¶40(b)), and with allegedly altering pre-existing COAs to say DMAA was sourced from "geranium stems." (¶40(c)).

*Count 2 (Wire fraud):*

The Indictment charges that on May 14, 2010, Hebert sent an email from Massachusetts to Person Z allegedly containing a fake COA and telling the retailer that DMAA was a natural extract. (¶48).  This is apparently a reference to the same incident mentioned in ¶ 26 and ¶ 40 (b).

*Count 6 (Obstruction):*

Hebert is charged with allegedly distributing, or causing the distribution of, OEP to prevent seizure by the FDA and failing to provide information concerning OEP (¶¶ 53-53). This alleged obstruction by Hebert simply relates to the Company's decision to continue to sell OxyElite Pro abroad since there was no prohibition against such sales.

*Count 7 (Conspiracy to introduce misbranded food):*

Hebert not specifically mentioned at all in the "manner and means" or the "overt acts" allegations. (¶¶ 60-63)

*Count 9 (Introducing misbranded food):*

On one occasion (October 4, 2013), Hebert and others are charged with shipping OEP "Advanced Formula" which was allegedly misbranded because the labeling listed C.A. (root) extract as an ingredient even though it was not actually contained in the product (¶68).

*Count 10 (Introducing adulterated dietary supplement):*

On one occasion (February 21, 2013), Hebert and others are charged with shipping OEP "New Formula" which was allegedly adulterated because it "presented a significant or unreasonable risk of illness or injury under condition of use recommended in labeling." The evidence will show that Hebert had nothing to do with the product's formulation. Moreover, the "risk of injury" issue is the subject of numerous *Daubert* motions.

*Count 10 (Money laundering):*

The evidence relating to this charge is summarized in the "Flow of Proceeds and Matt Hebert Accounts" chart which was submitted to the Court *ex parte* in order to obtain a freeze order. The chart, together with the agent's affidavit in support, fail to demonstrate any money laundering. They show simple bank and investment deposits. Moreover, as Hebert has pointed

out, the chart and affidavit show that the Government has illegally obtained an effective pre-trial seizure of untainted funds, for which Hebert has urged the court to conduct a hearing pursuant to *Honeycutt v. United States,* 137 S. Ct. 1626 (2017) and *Luis v. United States*, 136 S. Ct. 1083 (2016).

## II.   ARGUMENT

Hebert is a minor player in this case.  He was apparently indicted, and subjected to an illegal asset freeze, in an effort to coerce a guilty plea and testimony against his co-defendants. But, Hebert wants to proceed to trial and believes that co-defendant testimony would exonerate rather than inculpate him.

The case is further complicated by these critical facts: (1) Hebert *may* wish to introduce documents and testimony relating to oversight by a succession of lawyers who were highly competent in food, drug, and dietary supplement law; (2) during most of the time encompassed by the Superseding Indictment, Hebert did not even live or work in Texas and had little or no face-to-face contact with the co-defendants; (3) co-defendant Sistesh Patel was convicted of a felony in the Western District of Virginia in 2017; and (4) co-defendants Geissler and Jon Doyle have testified at great length in various civil case depositions in a manner which has tended to exculpate Hebert, but which presumably could also be used against Hebert or other Defendants.

*Severance in the Fifth Circuit*

Hebert seeks a separate trial based on the tenets of Rule 14(a), Fed. R. Crim. P. and contends that the prejudice that would inure to Hebert should he be tried with USPLabs, Geissler, Doyle, Patel and S.K. Laboratories, Inc. would be so great that failure to sever would constitute an abuse of discretion.[1]

---

[1] Hebert is not opposed to a trial with co-defendants Willson and Miles should they move for a severance.

We recognize that the "system evinces a preference for joint trials of defendants who are indicted together." *United States v. McRae*, 702 F.3d 806, 821 (5th Cir. 2012). But this is a case like *McRae* where the prejudice to a defendant resulting from joinder with co-defendants militates in favor of a separate trial. This is, indeed, particularly true here, where the parties have estimated the trial may require several weeks (or even months) and the evidence at the trial will mostly be directed at other defendants. The spillover effect would simply be too great.

"In deciding a motion for severance, the District Court must balance the potential prejudice to the defendant against the public interest in joint trials where the case against each defendant arises from the same general transaction." *United States v. Berkowitz*, 662 F.2d 1127; 1132 (5th Cir. 1981).

### *The Good Faith of Hebert*

An anomaly of this case is the confusing and inconsistent regulatory scheme that necessitated the advice of numerous attorneys over time. Prior to indicting, the Government was well aware that USPLabs had hired some of the best FDA lawyers in the country. Hebert *may* wish to obtain testimony and documents from various lawyers to demonstrate his good faith. This issue has not yet been determined. But Hebert's co-defendants may be disinclined to utilize such a defense. That is, it is not clear what position his co-defendants, other than Cy Willson,[2] would take. Thus, a separate trial is necessary.

### *Hebert Did Not Even Live in Texas*

During most of the period covered by the Superseding Indictment, Hebert lived in Massachusetts and had another job. Of course, there is no requirement that alleged co-conspirators enjoy physical proximity, but in this case, the location of Defendant Hebert is very

---

[2] Certain documents evidencing legal advice or opinions which were circulated to Mr. Willson have been held not to be privileged in a prior proceeding before Judge Fitzwater.

5

relevant. The record at trial may be replete with evidence relating to meetings, customer conferences, etc., that Hebert did not attend—or was even aware of. Yet, his presence in the courtroom will make him the victim of the spillover effect of that type of evidence. Although he was a mere graphics technician, the jury will have difficulty separating him from other people's statements and actions. The jury could easily conclude that Hebert somehow participated in something he did not and "was therefore deserving of some level of punishment consistent with the other [defendants] misconduct" if any. *McRae*, 702 F.3d at 822; and *see U.S. v. Solomon*, 609 F.2d 1172 (5th Cir. 1980).

### *The Patel Conviction*

In 2017, Sistesh Patel was convicted in a supplement-related trial in the Western District of Virginia. This conviction of Mr. Patel in a completely unrelated case would tend to highly prejudice Hebert. For example, the record in this trial may indicate that Hebert had occasional communications with Patel and his lab facility over label issues. Even those incidental contacts could cast Hebert in a bad light. This would enhance the possibility of jury confusion and set Hebert up for a significant spillover effect. Thus, the prejudice that Hebert would suffer tips the balance in favor of a separate trial.

### *Prior Civil Suit Testimony by Co-Defendants Exculpates Hebert, but Could Also Have Negative Spillover Effects*

Based on available transcripts of depositions taken in one or more of the pending civil cases, co-defendants Geissler and Doyle are in a position to offer helpful, exculpatory evidence to the jury. Hebert however, would be unable to call them as witnesses at a joint trial.

The necessity of this testimony should be obvious: Geissler and Doyle are the majority owners of USPLabs. No one would be more aware of the respective roles of each individual in the Company. Hebert would absolutely need their testimony to reinforce his minor role in the

**6**

Company, lack of involvement in product decisions, and his usefulness as a computer-savvy worker. Counsel for Hebert has discussed the matter with counsel for Messrs. Geissler and Doyle and believes they would testify in a manner which would completely exonerate Hebert if such testimony was elicited in a separate, later trial.

On the other hand, the depositions of co-defendants are replete with efforts by plaintiff's attorneys to impeach or otherwise cast the deponents in a bad light. The specter of the Government reading long excerpts from the depositions of Messrs. Geissler and Doyle presents the Court with *Bruton* problems. *See, Bruton v. United States*, 544 U.S. 1033 (1968). As a result, the Court should order the Government to produce for in camera inspection, any defendants' statement it intends to use as evidence. Rule 14 (b), Fed. R. Crim. P.

WHEREFORE, for all of the foregoing reasons, Defendant Hebert urges the Court to grant him a separate trial.

Respectfully submitted,

*/s/ S. Cass Weiland*
S. Cass Weiland
Texas Bar No. 21081300
Robert A. Hawkins
Texas Bar No. 00796726
SQUIRE PATTON BOGGS (US) LLP
2000 McKinney Avenue, Suite 1700
Dallas, Texas 75201
(214) 758-1504
(214) 758-1550 (fax)
cass.weiland@squirepb.com
robert.hawkins@squirepb.com
ATTORNEYS FOR DEFENDANT
MATTHEW HEBERT

## CERTIFICATE OF CONFERENCE

This is to certify that on, October 3, 2017, the undersigned placed a call to Assistant U.S. Attorney Errin Martin for the purpose of conference as to the foregoing motion. Ms. Martin stated that the Government opposes Defendant Hebert's Motion for Severance.

/s/ S. Cass Weiland
S. Cass Weiland

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing motion was served via electronic delivery via the court's ECF system, on this 6th day of October, 2017 on all counsel of record.

/s/ S. Cass Weiland
S. Cass Weiland