**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

_____

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | &#124; | |
| | &#124; | |
| | &#124; | |
| **v.** | &#124; | **No. 3:15-cr-00496-L** |
| | &#124; | |
| **USPLABS, LLC** (1) | &#124; | |
| **JACOBO GEISSLER** (2) | &#124; | |
| **JONATHAN DOYLE** (3) | &#124; | |
| **MATTHEW HEBERT** (4) | &#124; | |

**DEFENDANTS USPLABS, LLC, JONATHAN DOYLE, JACOBO GEISSLER, AND
MATTHEW HEBERT'S MOTION AND BRIEF TO DISMISS COUNT SIX**

Defendants USPlabs, LLC ("USPlabs"), Jonathan Doyle, Jacobo Geissler, and Matthew

Hebert (collectively, "Defendants"), move this Court to dismiss Count Six of the Superseding

Indictment for failure to state an offense. *See* Dkt #95 (Indictment) at ¶¶ 49-55.  Count Six must

be dismissed because (1) it fails to identify the "pending proceeding . . . before [a] department or

agency of the United States" that the Defendants allegedly obstructed, (2) it fails to establish that

any such proceeding was within "the due and proper administration of law," and (3) it fails to

identify any acts specifically intended to "influence, obstruct or impede" such due and proper

administration of law.

## TABLE OF CONTENTS

FACTUAL BACKGROUND .......................................................................................................1

ARGUMENT ...........................................................................................................................3

I.     THE FDA INSPECTIONS IN OCTOBER/NOVEMBER 2013 WERE NOT A " PROCEEDING BEFORE" AN AGENCY OR DEPARTMENT ......................................3

        A.    Only Proceedings Before an Agency or Department Are Subject to 18 U.S.C. § 1505................................................................................................................4

        B.    The FDA's Inspections in October/November 2013 Were Not "Proceedings Before" FDA ....................................................................................................6

II.    NONE OF THE ALLEGED CONDUCT "OBSTRUCTED OR IMPEDED" THE "DUE AND PROPER ADMINISTRATION OF THE LAW" ......................................................7

        A.    FDA Inspectors Had No Legal Authority To Seize or Detain USPlabs' Product At the Time of the October/November Inspections t.................................................10

        B.    Defendants Could Not Have "Obstructed or Impeded" a Proceeding By Omitting Information It Had No Obligation To Provide.. ....................................................12

CONCLUSION.....................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ali v. Fed. Bureau of Prisons*,
    552 U.S. 214 (2008)....................................................................................................4

*Arthur Andersen LLP v. United States*,
    544 U.S. 696 (2005)....................................................................................................9

*Collings v. Morgan Stanley Dean Witter*,
    224 F.3d 496 (5th Cir. 2000) ....................................................................................2

*Fullilove v. Klutznick*,
    448 U.S. 448 (1980)....................................................................................................9

*United States v. Aguilar*,
    242 Fed. App'x 239 (5th Cir. 2007) .........................................................................9

*United States v. Batten*,
    226 F. Supp. 492 (D.D.C.1964) ................................................................................4

*United States v. Bhagat*,
    436 F. 3d 1140 (9th Cir. 2006) .................................................................................4

*United States v. Binette*,
    828 F. Supp. 2d 402 (D. Mass. 2011) ......................................................................5

*United States v. Dunn*,
    434 F. Supp. 2d. 1203 (M.D. Ala. 2006) ..................................................................5

*United States v. Ermoian*,
    752 F.3d 1165 (9th Cir. 2013) ..................................................................................5

*United States v. Griego*,
    837 F.3d 520 (5th Cir. 2016) ....................................................................................9

*United States v. Hayden*,
    64 F.3d 126 (3d Cir. 1995).......................................................................................14

*United States v. Kay*,
    513 F.3d 432 (5th Cir. 2007) ....................................................................................9

*United States v. Kelley*,
    36 F.3d1118 (D.C. Cir. 1994) ..................................................................................4

*United States v. Linares*,
     No. 16-30650, 2017 WL 2713037 (5th Cir. June 22, 2017) ...................................4

*United States v. Mitchell*,
     877 F.2d 294 (4th Cir. 1989) ...................................................................................8

*United States v. Moyer*,
     674 F.3d 192 (3d Cir. 2012).....................................................................................13

*United States v. Pedraza*,
     636 Fed. App'x 229 (5th Cir. 2016) ........................................................................6

*United States v. Rainey*,
     757 F.3d 234 (5th Cir. 2014) ...............................................................................8, 11

*United States v. Ramos*,
     537 F.3d 439 (5th Cir. 2008) ............................................................................5, 6, 13

*United States v. Ratcliff*,
     806 F.2d 1253 (5th Cir. 1986) .................................................................................4

*United States v. Safavian*,
     429 F. Supp. 2d 156 (D.D.C. 2006) ....................................................................8, 11

*United States v. Schwartz*,
     924 F.2d 410 (2d Cir. 1991)......................................................................................4

*United States v. Senffner*,
     280 F.3d 755 (7th Cir. 2002) .............................................................................4, 6, 9

*United States v. Taohim*,
     817 F.3d 1215 (11th Cir. 2013) ...............................................................................4

*United States v. Transocean Deepwater Drilling Inc.*,
     936 F. Supp. 2d 818 (S.D. Tex. 2013) ....................................................................9

**Statutes**

18 U.S.C. § 1001...............................................................................................................14

18 U.S.C. § 1505.........................................................................................................*passim*

18 U.S.C. § 1512........................................................................................................5, 13

18 U.S.C. § 1519.........................................................................................................6, 14

21 U.S.C § 333..................................................................................................................7

21 U.S.C. § 334 ............................................................................................3, 7, 10, 11

21 U.S.C. § 335a ........................................................................................................7

21 U.S.C. § 335b ........................................................................................................7

21 U.S.C. § 335c ........................................................................................................7

21 U.S.C. §§ 350c ....................................................................................................13

21 U.S.C. § 350d ........................................................................................................7

21 U.S.C. § 350l .........................................................................................................7

21 U.S.C. § 373 ....................................................................................................7, 13

21 U.S.C. § 374 .................................................................................................. *passim*

21 U.S.C. § 381 ........................................................................................................12

**Other Authorities**

21 C.F.R. § 17.19(b)(5) ..............................................................................................7

## FACTUAL BACKGROUND

The Indictment charges Defendants in 11 counts with a number of crimes related to (1) their alleged misrepresentations to their customers regarding certain ingredients in their OxyElite Pro workout dietary supplement products, (2) their alleged misrepresentations in connection with the importation of certain dietary ingredients into the country, and (3) the alleged risk of consumer harm posed by its aegeline-containing OxyElite Pro products.

Count Six charges Defendants with the obstruction of an agency proceeding under 18 U.S.C. § 1505.  The alleged "proceeding" appears to be FDA's inspections of USPlabs' Dallas facilities, and other Dallas-area facilities storing USPlabs' products.  More specifically, the Indictment alleges that in October 2013, "in response to reports of an outbreak of liver injuries associated with USP Labs' products containing aegeline," FDA was conducting an investigation that involved "inspections of USP Labs in Dallas as well as other facilities storing USP Labs' products in order to determine whether USP Labs' products containing aegeline were responsible for the outbreak."  Indictment ¶ 50; *see also id*. ¶ 34.  It further alleges that Defendants "corruptly attempted to obstruct and impede" those inspections by:

- Promising FDA that it would "cease distribution" of OxyElite Pro products (*id*. ¶¶ 34, 52);

- Selling as much OxyElite Pro as it could as quickly as possible thereafter, and "attempt[ing] to ship the rest of the OxyElite Pro in its possession out of the United States" (*id*. ¶ 34; *see also id*. ¶ 53);

- Conducting such sales over the phone "in order to avoid creating a paper trail" (*id*. ¶ 53); and

- "[F]ailing to provide material information about OxyElite Pro, the anticipated shipments thereof, and the promotional activities therefor" (*id*. ¶ 54).

1

The allegations regarding this "proceeding," however, are misleading without proper context, which can be provided through reference to the public and agency documents relating to these allegations.[1]   On October 7, 2013, Jamie Bumpas, an FDA Consumer Safety Officer, issued USPlabs a Notice of Inspection pursuant to 21 U.S.C. § 374(a)(1).  *See* Ex. 1.  The next day, Kenneth Miles – USPlabs' Chief Compliance Officer – wrote to Reynaldo Rodriguez, FDA's Dallas District Director, stating that USPlabs would "cease distribution of OxyELITE Pro 'Purple Top' and Powder version [sic] as we cooperate with FDA and CDC on this investigation."  Ex. 2.  Later the same day, USPlabs issued a press release, which was posted on its website, clarifying that it believed its products were safe, but that it had nevertheless "ceased **domestic** distribution . . . until the [FDA] investigation [was] completed."  Ex. 3 (emphasis added).  On November 5, 2013 – after 11 inspection days spread out over thirty calendar days – FDA closed its inspections and issued its Inspectional Observations to USPlabs.  *See* Ex. 4. Although the FDA inspectors made a number of minor non-safety record-keeping related observations regarding OxyELITE Pro and other aegeline-containing products, and also took a number of samples of USPlabs products (presumably for testing),[2] FDA did not attempt at any time during the course of its inspections to temporarily detain any USPlabs products it believed were adulterated.[3]

---

[1]      In the civil context, defendants have long had the ability to attach and/or refer to documents formally outside the pleadings in connection with a motion to dismiss, if those documents are "referred to in the plaintiff's complaint and are central to [defendant's own case]."  *Collings v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).  While the Fifth Circuit has not affirmatively extended this principle to the criminal context, there is no reason why it should not equally apply to criminal cases.

[2]      *See, e.g.*, Ex. 5; Ex. 1

[3]      Although FDA must initiate a judicial proceeding to seize permanently any adulterated article of food, *see* 21 U.S.C. § 334(a)(1), an FDA inspector is permitted to order the temporary detention (for up to 30 days) of "any

## ARGUMENT

Count Six must be dismissed for three distinct reasons. *First*, it fails to identify any "proceeding" that Defendants allegedly obstructed or impeded. Instead, it only refers to FDA inspections that do not qualify as "proceedings before" the agency within the meaning of 18 U.S.C. § 1505. *Second*, although Count Six alleges that Defendants committed a number of alleged "corrupt" acts, including the sale and shipment of products, using phone calls to conduct business with customers, and "failing to provide material information about OxyElite Pro, the anticipated shipments thereof, and the promotional activities therefor," *id*. at ¶ 54, neither the sale and shipment of product nor the conducting of business by telephone is inherently corrupt, and the failure to provide "material information" cannot be inherently corrupt absent a duty to provide such information. *Third*, Count Six relies on USPlabs' shipments of goods in international commerce. Such shipments, however, are outside FDA's jurisdiction, and therefore cannot possibly "influence, obstruct, and impede *the due administration of justice*" by that agency. Accordingly, the Court should dismiss Count 6 in its entirety

## I.   THE FDA INSPECTIONS IN OCTOBER/NOVEMBER 2013 WERE NOT A "PROCEEDING BEFORE" AN AGENCY OR DEPARTMENT

Count Six is premised upon the theory that FDA's inspections of USPlabs' facilities and other facilities housing USPlabs' products constituted a "proceeding" under 18 U.S.C. § 1505. However, Count Six must be dismissed because FDA inspections do not qualify as a "proceeding before" the agency within the meaning of § 1505.

---

article of food that is found during an inspection, examination or investigation" if the inspector "has reason to believe that such article is adulterated. . . ." *Id*. at § 334(h).

A.     **Only Proceedings <u>Before</u> an Agency or Department Are Subject to 18 U.S.C. § 1505**

18 U.S.C. § 1505 imposes criminal liability, in relevant part, upon any individual who

> corruptly . . . influences, obstructs, or impedes or endeavors to influence, obstruct or impede the due and proper administration of the law under which any *pending proceeding* is being had *before* any department or agency of the United States[.]

18 U.S.C. § 1505 (emphases added).  In other words, to convict under § 1505, the Government must prove that the defendant obstructed or impeded "[a] pending proceeding . . . before" a federal department or agency.  *See, e.g.*, *United States v. Taohim*, 817 F.3d 1215, 1220 (11th Cir. 2013) (approving jury instructions laying out elements of a conviction under 18 U.S.C. § 1505); *United States v. Bhagat*, 436 F. 3d 1140, 1147 (9th Cir. 2006) (laying out same elements).

Courts construe the term "proceeding" broadly in cases arising under 18 U.S.C. § 1505. *See, e.g.*, *United States v. Schwartz*, 924 F.2d 410, 423 (2d Cir. 1991).  In doing so, they have left no doubt that a formal adjudicatory hearing before an agency qualifies as a "proceeding" under § 1505.  *See, e.g.*, *United States v. Ratcliff*, 806 F.2d 1253, 1255 (5th Cir. 1986) (discussing IRS hearings); *United States v. Linares*, No. 16-30650, 2017 WL 2713037, at *2 (5th Cir. June 22, 2017) (same).  They have also made equally clear that a "mere police investigation" is not within the statute's ambit.  *See, e.g.*, *United States v. Senffner*, 280 F.3d 755, 761 (7th Cir. 2002); *see also United States v. Kelley*, 36 F.3d1118, 1127 (D.C. Cir. 1994); *United States v. Batten*, 226 F. Supp. 492, 493 (D.D.C.1964).

Moreover, as the Supreme Court has consistently held, "a single word must not be read in isolation but instead must be defined by reference to its statutory context." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 234 (2008).  Here, this admonition requires the analysis of the entire phrase "before any department or agency of the United States," which follows the phrase

"pending proceeding," and thereby limits the kinds of agency activities to which 18 U.S.C. § 1505 applies.

The critical limiting word in the quoted statutory language is "before."  While the Fifth Circuit has not construed that word in cases arising under 18 U.S.C. § 1505, it has done so in cases arising under 18 U.S.C. § 1512, which covers certain kinds of conduct related to "official proceeding[s] *before* . . . a government agency . . . ."  18 U.S.C. § 1512 (emphasis added).  In that context, the Fifth Circuit clearly held that the use of the word "before" in conjunction with the word "agency" indicates that there must be "some formal convocation of the agency in which parties are directed to appear, instead of any informal investigation conducted by any member of the agency."  *United States v. Ramos*, 537 F.3d 439, 462-63 (5th Cir. 2008).  *See also United States v. Ermoian*, 752 F.3d 1165, 1171 (9th Cir. 2013) ("The use of the preposition 'before' suggests an appearance in front of the agency sitting as a tribunal."); *United States v. Binette*, 828 F. Supp. 2d 402, 404 (D. Mass. 2011) (adopting *Ramos*' definition of "official proceeding"); *United States v. Dunn*, 434 F. Supp. 2d. 1203, 1207 (M.D. Ala. 2006) (noting that the term "official proceeding . . . refers to hearings, or something procedurally similar, held before federal agencies.")

The Fifth Circuit and the Seventh Circuit have also indicated that a key dividing line between proceedings "before" an agency and "mere police investigations" is the power of the subpoena.  In other words, where an agency has the power to issue subpoenas or require testimony under oath as part of an investigation, that investigation may be considered a "proceeding" within the meaning of 18 U.S.C. § 1505.  *See Ramos*, 537 F.3d at 463 n.17; *see also Senffner*, 280 F.3d at 761.

This reading of § 1505 is bolstered when compared to the language of 18 U.S.C. § 1519. Section 1519 makes it a crime to alter "any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation . . . of any matter ***within the jurisdiction of any department or agency*** of the United States."  18 U.S.C. § 1519 (emphasis added).  This language makes clear that Congress knows how to criminalize the obstruction of informal, non-convocational agency investigations when it wants to.  *See United States v. Pedraza*, 636 Fed. App'x 229, 234 (5th Cir. 2016).  It chose not to do so with § 1505, which criminalizes obstruction only of "pending proceedings . . . before" a federal department or agency.

**B.      The FDA's Inspections in October/November 2013 Were Not "Proceedings Before" FDA**

Under the plain language of § 1505 when read as a whole, and its logical construction under *Ramos* and other decisions outside the Fifth Circuit, the inspections conducted by FDA in October/November 2013 as alleged in Count 6 cannot qualify as "proceedings before" the agency.

FDA conducted its inspections in October/November 2013 pursuant to its authority under 21 U.S.C. § 374.  *See* Ex. 1.  Section 374 neither contemplates a "convocation of the agency in which parties are directed to appear," *Ramos*, 537 F.3d at 462-63, nor grants FDA the power of the subpoena, or the power to compel individuals to attend an inspection.  Where, as here, neither of these conditions obtains, an agency's activities cannot be "proceedings before" the agency, and therefore cannot form the basis of a prosecution under 18 U.S.C. § 1505.

That is not to say that FDA lacks the authority to conduct more convocational hearings that could qualify as "proceedings" under § 1505.  It has statutory authority to conduct "informal hearings" in a variety of circumstances, including (1) to review a detention order (*see* 21 U.S.C.

§ 334(g)(1)), (2) to review a mandatory recall decision (*see* 21 U.S.C. § 350l), and (3) to review an order terminating the registration of a food facility (*see* 21 U.S.C. § 350d(2)).  In total, nearly 20 different sections of the Food, Drug, and Cosmetic Act contemplate such informal hearings before the agency.  FDA also has statutory authority to conduct more formal "agency hearings" (and issue related subpoenas) in at least three circumstances: (1) with respect to debarment issues (*see* 21 U.S.C. § 335a(i)); (2) with respect to the imposition of civil monetary penalties (*see* 21 U.S.C §§ 333(f)(5)(A) and 333(g)(2); 21 C.F.R. § 17.19(b)(5)); and (3) with respect to various proceedings related to abbreviated new drug applications (*see* 21 U.S.C. §§ 335b(b)(1)(A) and 335c(b)).

However, none of the procedural attributes of these hearings is present in an FDA inspection conducted pursuant to § 374.  Indeed, such inspections result not in any formal findings or regulatory action taken by FDA, but instead in the issuance of "inspectional observations," which as FDA acknowledges "do not represent a final Agency determination regarding [the inspected entity's] compliance."  *See* Ex. 4.

Accordingly, the Court should dismiss Count Six because the October/November 2013 inspections were not "pending proceeding[s] . . . before" FDA.

## II.     NONE OF THE ALLEGED CONDUCT "OBSTRUCTED OR IMPEDED" THE "DUE AND PROPER ADMINISTRATION OF THE LAW"

Count Six identifies a number of discrete acts that the Government alleges were "corrupt[] attempt[s]" to obstruct the October/November 2013 inspections.  Those alleged acts include (1) Defendants' sale of products that were not legally seized or detained at the time, (2) Defendants' conducting of sales of aegeline-containing products over the phone,[4] and (3)

---

[4]     The Indictment also fails to allege a violation of  § 1505 with respect to sales conducted over the phone because it fails to allege that records of those sales were properly requested by FDA inspectors and thereafter

Defendants' failure "to provide material information about OxyElite Pro, the anticipated shipments thereof, and the promotional activities therefor."  Indictment ¶¶ 53-54.

While the Fifth Circuit has not defined the phrase "due and proper administration of the law," which governs obstruction of agency proceedings under § 1505, it provided a strong indication of what that phrase means when it interpreted the phrase "due and proper exercise of [a] power of inquiry" in the portion of § 1505 that governs obstruction of Congressional proceedings.  Specifically, the Fifth Circuit has stated that an analysis of whether a given exercise of power was "due and proper" should be based on "a careful examination of all the surrounding circumstances."  *United States v. Rainey*, 757 F.3d 234, 246 (5th Cir. 2014) (citing *United States v. Mitchell*, 877 F.2d 294, 300 (4th Cir. 1989)).  The primary – although not exclusive – focus of this holistic analysis is the question of whether the action in question was a "legitimate exercise of investigative authority," or merely an "unauthorized frolic[]."  *Id.*  Or, as a district court interpreting *Mitchell* put it, "[a] congressional committee's legitimate exercise of its investigative authority must be [in] an area within its purview . . . ."  *United States v. Safavian*, 429 F. Supp. 2d 156, 163 (D.D.C. 2006).[5]

---

improperly withheld by Defendants.  In other words, it fails adequately to allege any specific intent behind Defendants' use of the phones to conduct sales during the period alleged in Count Six.  The reason the Government failed to make such an allegation is clear – it has known from the emails it seized more than 4 years ago that Defendants in fact created written records of these sales.  *See, e.g.*, Ex. 7 (contemporaneously-created record of aegeline sales).  More importantly, however, the Government omits the key fact that these sales were conducted by distributors who had an independent right to sell the products in their inventory, and not by Defendants themselves. The Government does not even attempt to allege how Defendants' failure to object to such sales could constitute a violation of § 1505 – an unsurprising fact, given that no court has taken a position so unmoored from the text of the statute.

[5]        Of course, in order to obstruct the "due and proper" activities of Congress or an agency, a defendant's acts must have the "natural and probable effect of interfering with [such] proceeding[s]."  *Senffner*, 280 F.3d at 762 (interpreting § 1505 and citing *United States v. Aguilar*, 515 U.S. 593, 599 (1995)).  As noted herein, Defendants' alleged failure to produce certain records that were never actually requested cannot possibly have interfered with the FDA's October/November inspections.

Likewise, when determining whether an agency's administration of the law is "due and proper" under § 1505, a court should consider all of the relevant circumstances, with a focus on whether the agency had the authority to act in a given situation.[6]

Moreover, the mere fact that an action may impede government proceedings does not convert it from an innocent one to a corrupt one.  *See Arthur Andersen LLP v. United States*, 544 U.S. 696, 703 (2005).  Indeed, aside from very limited exceptions – for example, directly asking a witness to lie under oath – very few actions are inherently corrupt.  *See United States v. Aguilar*, 242 Fed. App'x 239, 245 (5th Cir. 2007).  Thus, in the ordinary course, in order to prove that an action is committed corruptly under 18 U.S.C. § 1505, the Government must establish that the defendant acted "knowingly and dishonestly, with the specific intent to subvert or undermine the due administration of justice." *United States v. Kay*, 513 F.3d 432, 454-55 (5th Cir. 2007) (approving jury instructions using such language); *see also United States v. Griego*, 837 F.3d 520, 523 (5th Cir. 2016) (citing *Kay* and adding that "[t]he generalized mens rea required to violate § 1001 is not sufficient to prove the more specific mens rea required to violate § 1505").  Under these standards, the actions alleged in Count 6 of the Indictment were neither inherently corrupt, nor undertaken for corrupt purposes.

---

[6]    If anything, agency actions should be scrutinized even more closely than Congressional actions for the presence of valid authority, as agencies are mere "creatures of statute [that] cannot exceed the authority granted to them by the legislature," *United States v. Transocean Deepwater Drilling Inc.*, 936 F. Supp. 2d 818, 829 (S.D. Tex. 2013) (citing *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)), while Congress is a co-equal branch of government limited only by the Constitution.  *See Fullilove v. Klutznick*, 448 U.S. 448, 472 (1980), *rev'd on other grounds*, *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200 (1995).

**A.   FDA Inspectors Had No Legal Authority To Seize or Detain USPlabs' Product at the Time of the October/November Inspections**

The FDA possesses substantial powers under 21 U.S.C. § 374.  Among other things, it may enter any factory, warehouse, or similar establishment to conduct an inspection without a court order, merely upon the presentation of "appropriate credentials and a written notice to the owner . . . ."  *Id.* at § 374(a)(1)(A).  Once they have entered the facility, FDA inspectors have the right to inspect virtually any physical object they choose, and the right to review records that dietary supplement manufacturers must maintain pursuant to 21 U.S.C. § 350c – once again, without a court order.  *See id.* at § 374(a)(1)(B).  FDA inspectors may also take samples of dietary supplements in order to determine if they consist, "in whole or in part of any filthy, putrid, or decomposed substance, or [are] otherwise unfit for food . . . ."  *Id.* at § 374(d).  Once again, this sampling can occur without any court order, or even formal agency action.

There are, however, limits to these powers.  Most critically here, FDA has no authority to seize dietary supplements while on-site for an inspection.  Instead, if FDA wants to formally seize a product, it must ask the United States Attorney to file an *in rem* proceeding in the Federal court for the district where the product is located.  *See* 21 U.S.C. § 334(a)(1).   And while FDA may issue an administrative detention order – valid for up to 30 days – if it "has reason to believe that [a dietary supplement] is adulterated or misbranded," even that power is not vested directly in FDA inspectors.  *Id.* at § 334(h)(1)(A).  Instead, such an order may only be issued by the relevant District Director, or her/his superior.  *See id.* at § 334(h)(1)(B).

Given this critical limitation on FDA's inspectional powers, Defendants' alleged sales of OxyElite Pro products during the October/November 2013 Inspections "to avoid having FDA seize the product," Indictment ¶ 34, cannot, as a matter of law, constitute an act of obstruction or

10

impediment of the "due and proper administration of the law" during those inspections.  This is because the seizure of such products was not "[in] an area within its purview."  *Safavian*, 429 F. Supp. 2d at 463; *accord Rainey*, 757 F.3d at 246 (noting that focus of "due and proper" analysis is whether action in question was "legitimate exercise of investigative authority").[7]

And while FDA inspectors could have temporarily detained product if they "had reason to believe" that USPlabs' products were adulterated or misbranded, 21 U.S.C. § 334(a)(1), nothing in the inspectional observations contained in FDA's close-out report gives any indication that the FDA inspectors observed anything that would have given rise to such a belief.  Rather, each of FDA's observations related either to recordkeeping errors or failures to adhere to written quality-related policies.  *See* Ex. 4 at 1-9.  This was not for lack of trying, as the FDA inspectors spent nearly a dozen days on-site over a 30-day period, and took samples of various different products.  *See* Ex. 4 at 10 (listing inspection dates) and *See* Ex. 5 (sample receipts).  However, instead of issuing an administrative detention order or asking the United States Attorney to begin seizure proceedings, FDA closed its inspections on November 5, 2013, roughly one month after they started.[8]

FDA did not make any allegations that USPlabs' products were adulterated until November 6, 2013, the day after the inspections were completed, when Michael Taylor – the

---

[7]     As discussed above, the sales that the Government alleges Defendants conducted during the period referenced in Count Six were actually third-party sales conducted by distributors of product that they owned and stored in their own warehouses.  Because those warehouses were not owned or operated by USPlabs, they were not within the ambit of the October/November Inspections.  As such, any third-party distributor sales that Defendants helped to facilitate during the period referenced in Count Six could not have obstructed FDA's inspection of USPlabs.

[8]     Additionally, the notion that Defendants obstructed these inspections by "attempt[ing] to ship the rest of the OxyElite [sic] Pro in its possession out of the United States to avoid having FDA seize the product," Indictment ¶ 34, is a red herring, as FDA has no jurisdiction over products intended for international sale.  *See* 21 U.S.C. § 381(e).

agency's Deputy Commissioner for Food and Veterinary Medicine – sent a letter to Mr. Geissler. *See* Ex. 6. In that letter, Mr. Taylor asked USPlabs to conduct a voluntary recall of certain OxyELITE Pro products containing aegeline because FDA believed that those products were "adulterated . . . and that there [was] a reasonable probability that the use of or exposure to [the products would] cause serious adverse health consequences or death to humans. . . ." *Id.* at 1-2.

Thus, even assuming *arguendo* that FDA's inspections in October/November 2013 were proceedings before the agency, FDA's authority to ask the United States Attorney to bring seizure proceedings, or to issue its own administrative detention order, did not arise until *after* those purported "proceedings" were closed. Because FDA had no such authority while the investigations were ongoing, any sales by Defendants of OxyElite Pro products during that time could not have obstructed or impeded, or even endeavored to obstruct or to impede, "the due and proper administration of the law."[9]

### B. Defendants Could Not Have "Obstructed or Impeded" a Proceeding By Omitting Information It Had No Obligation To Provide.

The allegation that Defendants "corruptly attempted to obstruct and impede FDA's investigation by failing to provide material information about OxyElite [sic] Pro, the anticipated shipments thereof, and promotional activities therefore," Indictment ¶ 54, likewise cannot constitute an act of obstruction or impediment. This is because Defendants had no affirmative duty to provide FDA with any more information that what FDA was legally authorized to obtain.

FDA had no general authority to demand – and USPlabs had no duty to provide – all "material information" about aegeline-containing OxyELITE Pro products during the course of

---

[9]       Because FDA's inspectors had no authority to seize or administratively detain USPlabs' dietary supplements during the inspections, it also follows that conducting sales by phone, *see* Indictment ¶ 53, could not obstruct the agency's seizure and/or administrative detention authority.

the inspections.  Instead, FDA's authority to demand information during an inspection is limited

by the statutory grants of authority in 21 U.S.C. §§ 350c, 373, and 374.  Under § 350c, FDA may

require dietary supplement manufacturers like USPlabs to provide it with "access to all records

relating to [an allegedly adulterated dietary supplement]."  *Id*. § 350c.  Under § 373, FDA may

require dietary supplement manufacturers to provide it with "all records showing the movement

in interstate commerce of" a given dietary supplement.  *Id*. § 373.  And under § 374, FDA may

require dietary supplement manufacturers to provide access to (a) "all pertinent equipment,

finished and unfinished materials, containers, and labelling" in a warehouse during the course of

an inspection, and (b) samples of any materials stored therein.  *Id*. § 374.  That FDA considered

certain information generically "material" to some undefined purpose does not mean that

withholding it was part of a corrupt attempt to obstruct justice, unless, at a minimum the

information also happened to fall within one of these categories, or FDA otherwise asked for it.

The Government has not alleged that Defendants withheld any of this information from FDA

inspectors.

While the Fifth Circuit has indicated that obstruction by omission is possible, it is only

possible when that omission violates a pre-existing duty.  *See*, *e.g.*, *Ramos*, 537 F.3d at 460-61

(noting that defendants were convicted of obstruction under 18 U.S.C. § 1512 "[b]ased on

omissions of their respective duties").  This is consistent with the law of other circuits that have

addressed the issue as well.  *See United States v. Moyer*, 674 F.3d 192, 207-08 (3d Cir. 2012)

(upholding an obstruction of justice conviction under 18 U.S.C. § 1519 where police chief

omitted from official reports certain information that he had a duty to disclose).  In other words,

where a statute does not create a duty to disclose information, omission of that information is not

a criminal act.  *Accord United States v. Hayden*, 64 F.3d 126, 132 n.8 (3d Cir. 1995) (noting that

13

obstruction of justice convictions under 18 U.S.C. § 1001 would have been impossible "if there had been no duty to disclose information . . . .")  In sum, while affirmatively false or misleading statements always have the potential to violate various obstruction statutes, omissions have no such potential absent a duty to disclose.

Under this principle, a defendant's withholding of information from an FDA inspector that he did not believe he had any obligation to disclose – *i.e.*, because the law did not require such disclosure – cannot constitute an obstructive or impeding action done with "corrupt intent." Because there is no allegation in the Indictment that Defendants failed to provide to FDA inspectors any information they were obligated to provide during its October/November 2013 Inspections – let alone any hint that Defendants provided actively false or misleading information to the inspectors – Count Six must therefore be dismissed on this ground as well.

## **CONCLUSION**

For the foregoing reasons, Count 6 of the Indictment should be dismissed in its entirety.

Respectfully submitted:

**By:**

/S/ CHRISTOPHER NIEWOEHNER

Christopher Niewoehner (admitted *pro hac vice*)
Illinois Bar No. 6243575
Reid Weingarten (admitted *pro hac vice*)
Patrick F. Linehan (admitted *pro hac vice*)
David Fragale (admitted *pro hac vice*)

STEPTOE & JOHNSON LLP
1330 Connecticut Ave. NW
Washington, DC  20036
Phone: (202) 429-3000
Fax: (202) 429-3902
rweingarten@steptoe.com

Michael John Uhl
Texas Bar No. 20371050

FITZPATRICK HAGOOD SMITH & UHL
2515 McKinney Ave.
Dallas, TX 75201
Phone: (214) 237-0900
Fax: (214) 237-0901
muhl@fhsulaw.com

**ATTORNEYS FOR DEFENDANT
USPLABS, LLC**

/S/ RICHARD B. ROPER

Richard B. Roper
Texas Bar No. 01723370

THOMPSON & KNIGHT LLP
1722 Routh Street
Suite 1500
Dallas, TX 75201
Phone: (214) 969-1700
Fax: (214) 969-1751

**ATTORNEY FOR DEFENDANT
JONATHAN DOYLE**

15

/s/ S. CASS WEILAND                              /s/ MICHAEL P. GIBSON

S. Cass Weiland                                  Michael P. Gibson
Texas Bar No. 21081300                           Texas Bar No. 07871500

SQUIRE PATTON BOGGS (US) LLP                     BURLESON PATE & GIBSON LLP
2000 McKinney Ave.                               900 Jackson Street
Suite 1700                                       Suite 330
Dallas, TX 75201                                 Dallas, TX 75202
Phone: (214) 758-1504                            Phone: (214) 871-4900
Fax: (214) 758-1550                              Fax: (214) 871-7543
Email: cass.weiland@squirepb.com                 Email: mgibson@bp-g.com

**ATTORNEY FOR DEFENDANT**                       **ATTORNEY FOR DEFENDANT**
**MATTHEW HEBERT**                               **JACOBO GEISLER**

## CERTIFICATE OF SERVICE

On December 29, 2017, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served the U.S. Probation Officer, all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2), and the probation officer assigned to the case.

/s/ Richard B. Roper
Richard B. Roper

16